The City of Louisville *vs.* M. Kean.

The Same *vs.* N. Vacaro.

Lupe & Hambright *vs.* Barbee, &c.

Graf & Weyd *vs.* Same.

Case 3.

18bm  9
105  520

APPEAL FROM JEFFERSON CIRCUIT COURT.

INDICTMENT.

1. The charter of the city of Louisville, passed in March, 1851, conferred on the city council the power to license taverns in the city, with or without the power of retailing spirituous or fermented liquors, and also to license coffee houses, wherein such liquors might be sold by retail. The act of 1854 declares that this power of the city au-

CITY OF LOUIS-
VILLE
vs.
M. KEAN.
SAME
vs.
N. VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.

thorities shall not dispense with the necessity of giving the bond required in the county court, and taking the oath, and payment of the tax, required by the general laws.

2. The power conferred upon city authorities must be exercised in conformity with the general law, and only conferred a power on the city authorities to impose an additional tax for the privilege.

3. The council of Louisville is not bound to license coffee houses.

4. A proceeding against the city, which is a corporation, should be against the corporation or the general council as a body, that represents the corporation.

5. Under the general laws of the State a house of entertainment, in which spirituous liquors are not retailed, is not required to obtain a license, but obtaining a license to keep a tavern confers the right to retail. 14 *B Mon.* 385. By the city charter of Louisville such houses are required to obtain a license.

6. The county court has a discretion in granting tavern licenses, and so has the city authorities, which is a judicial, not an arbitrary, discretion, and unless it be shown that the discretion has been abused there is no cause of complaint.

7. The mandamus is not the appropriate remedy to control the exercise of a judicial discretion, and if exercised cannot be controlled by such a proceeding. (2 *Bibb*, 173; 19 *John.* 260; 10 *Pick.* 246; 5 *Iredell N. Carolina*, 328; 2 *Strange*, 81; 1 *Bur.* 556.)

[The facts of the case are stated in the opinion of the court.] REP.

[This case was decided at the Summer Term, 1856, but was accidentally omitted in the published decisions of that term.]

June 9, 1856.

Judge SIMPSON delivered the opinion of the court.

These cases have been heard together, as they are supposed to involve substantially the same principles.

They were applications to the Jefferson Circuit Court, for a writ of *mandamus* to compel the General Council of the city of Louisville, to grant to the petitioners the privilege of selling spirituous liquors by retail. In the two first mentioned cases, the applicants desired to keep a tavern; in the other two cases, they desired to keep coffee-houses merely. The Circuit Court entered a judgment in the two first cases for the petitioners, and dismissed the petitions in the other two cases.

The act chartering the city of Louisville, which was passed in March 1851, conferred upon the Gen-

eral Council, the power to license taverns in the city, with or without the privilege of selling spirituous or fermented liquors by retail; and also to license coffee-houses, and other houses and establishments, wherein such liquors might be sold by retail.

By an act to amend the license law passed in March 1854, it was enacted: "That wherever the mu-'nicipal authorities of a city or town, before the 'Revised Statutes went into effect, had the authori-'ty of licensing the retailing of spirituous liquors to 'be drank on the premises, they shall retain such 'power, and it shall not be deemed to be repealed by 'the Revised Statutes; but such licenses shall give 'no right to retail until the tax to the State shall 'have been duly paid, and bond given and oath tak-'en, as provided by the general laws."

It may, therefore, be assumed, that the city authorities, under this enactment, and the provisions of the Revised Statutes, which excepted out of the operation of the general repealing clause, all statutes of mere local relation to any county, city or town, or relating to the powers, privileges or franchises of any corporation, are still invested with the same power that was conferred upon them by the city charter.

The city charter, however, although it confers on the city authorities, the power to license taverns within the city, with the right to retail spirituous liquors, does not define the extent of this power, nor contain any provision which indicates that it was intended to be unlimited or arbitrary. On the contrary the inference manifestly deducible from the whole of the provisions on this subject, contained in the charter is, that this power was to be exercised in conformity with the general law, and all that was intended, was a transfer of the power to the city, with the right to impose an additional tax, for the grant of the privilege, besides that which was required to be paid to the State.

CITY OF LOUIS-
VILLE
vs.
M. KEAN.
SAME
vs.
N VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.

1. The charter of the city of Louisville, passed in March, 1851, conferred on the city council the power to license taverns in the city, with or without the power of retailing spirituous or fermented liquors, and also to license coffee houses, wherein such liquors might be sold by retail. The act of 1854 declares that this power of the city authorities shall not dispense with the necessity of giving the bond required in the county court, and taking the oath, and payment of the tax, required by the general laws.

2. The power conferred upon city authorities must be exercised in conformity with the general law, and only conferred a power on the city authorities to impose an additional tax for the privilege.

CITY OF LOUIS-
VILLE
vs.
M. KEAN.
SAME
vs.
N. VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.

Under the general law of the State, no establish-
ment nor house of any description, has a right to re-
tail spirituous liquors to be drank on their premises,
except licensed taverns. If any other should do so,
they are denounced as tippling houses, and subject-
ed to a fine for the offense. But as an exception to
the general law, and in contravention of its policy,
the Legislature has, in some instances, granted to
municipal corporations, the power to license coffee-
houses within their respective limits. Such grants
have always been regarded as merely conferring a
privilege, for the purposes of a local revenue, which
the municipal authorities may exercise or not, at
their own absolute discretion. This view, in our
opinion, consists with the legislative intention on the
subject, as well as with the policy of the general
law. The Legislature did not certainly intend to
make it the duty of, and to compel the General
Council of the city of Louisville, to license coffee-
houses. Such an intention being wholly inconsis-
tent with that general policy which the Legislature
has adopted, in relation to the sale of spirituous li-
quors by retail, should not be presumed, but must be
supposed not to exist unless its existence be clearly
and unequivocally manifested, which has not been
done by anything contained in the charter.

3. The council
of Louisville is
not bound to li-
cense coffee
houses.

The business of a coffee-house keeper, according
to the provisions of the general law, is unlawful. It
constitutes the person engaged in it, the keeper of a
tippling house, and subjects him to a penalty. It is
unlike a lawful business, which any person may car-
ry on who choses to do so, but which if carried on
in the city, may, although it cannot be prohibited by
the city authorities, be subjected to such police regu-
lations as may be deemed necessary for the welfare
of the local community.

The General Council had therefore a right to re-
fuse to license coffee-houses, and the judgment of

the Circuit Court in the two coffee-house cases is affirmed.

In the other two cases a preliminary question has been made, with respect to the right to prosecute an appeal in the name of the city of Louisville. The proceeding in the court below was against the Mayor and the members of the General Council. The act they were required to perform was a corporate act. The judgment against them should, therefore, be regarded as having been rendered against them in their corporate character. Indeed, the proceeding should properly have been against the corporation, or against the General Council, as the body that represented the corporation, so far as the petitioner's right to a tavern license, with a privilege to sell spirituous liquors, was concerned. If it should be regarded as a proceeding against the Mayor, and the General Council individually, the judgment might have been unavailing, if they had not been in office at the time it was rendered; and might therefore have been made ineffectual by their resignation during the pendency of the motion. But regarding it as a proceeding against the corporation, the judgment would be obligatory on the members of the General Council in office, at the time of its rendition; and it would not assume the character of a proceeding against individuals, unless it became necessary to issue an attachment for the enforcement of the judgment. To give proper effect to the proceeding therefore, we think it should be regarded as one against the corporation, and not against the defendants in their individual capacity; and so regarding it, the appeal was properly prosecuted in the name of the city.

In *Angel and Ames on Corporations*, 451, it is said, "If the act commanded is to be done by a select bo-' dy, the writ of mandamus may be directed to the ' select body, or to the whole corporation, since the ' act of the select body is the act of the corporation," and various cases are there referred to in support of

**Margin:**

CITY OF LOUIS-
VILLE
*vs.*
M. KEAN.
SAME
*vs.*
N. VACARO.
LUPE & HAM-
BRIGHT
*vs.*
BARBEE, &c.
and
GRAF & WEYD
*vs.*
SAME.

4. A proceeding against the city, which is a corporation, should be against the corporation or the general council as a body, that represents the corporation.

CITY OF LOUIS-
VILLE
vs.
M. KEAN.
SAME
vs.
N. VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.

5. Under the general laws of the State a house of entertainment, in which spirituous liquors are not retailed, is not required to obtain a license, but obtaining a license to keep a tavern confers the right to retail. 14 B. Mon. 385. By the city charter of Louisville such houses are required to obtain a license.

this proposition. It is also said that "the writ must 'be directed to the corporation or select body, not 'only in their proper names but in their proper ca-'pacity.'' That is, they must be proceeded against in their corporate capacity, in as much as the act they have to perform is a corporate act.

As the city has, under its charter, the exclusive power to license taverns with the privilege of selling spirituous liquors by retail, and as this power, except as it relates to taxation, is regulated and governed by the general law on the same subject, the duties of the county courts, and of the city of Louisville in the exercise of it, must be regarded as identical. Under the general law, a house of private entertainment, or, in other words, a tavern in which spirituous liquors are not retailed, is not required to obtain a license. Under the provisions of the city charter, such houses are required to pay a tax and to have a license. But under the general law, the keeper of a tavern who intends to sell spirituous liquors by retail, must obtain a license from the county court, and the license to keep a tavern authorizes the person who keeps it to sell spirituous liquors by retail, as was decided by this court in the case of *Commonwealth vs. Kamp*, 14 *B. Mon.* 385. It is not the duty of the county courts, however, to grant a license to keep a tavern to every applicant. They have a discretion upon the subject, not it is true an arbitrary, but a sound legal discretion. They are not allowed to grant a license to any person of bad character, or who does not keep an orderly house, nor unless they shall believe the applicant is prepared to accommodate his guests in the manner required by law, and shall also be satisfied that the keeping of a tavern at the place proposed is necessary for the accommodation of the public.

Taverns are necessary for the convenience of the traveling public. They are authorized, and their privileges and duties prescribed by the law. The county court is the tribunal under the general law to

decide on the propriety of their existence at the places proposed, and also of the qualifications of the applicants. But this power is not unlimited and uncontrolable. It must be exercised according to law; otherwise, it might be so exercised as wholly to defeat the legislative intention in regard to such houses, and to prevent their existence altogether. When taverns are licensed by the county courts, they have a right by law to sell spirituous liquors by retail. This right is not expressly conferred, but it is evident that the statute was intended to have this effect, in as much as it is made the duty of the county courts to fix the prices which are to be paid for wines and liquors at taverns within their counties, and as by the form of the bond that the statute prescribes, which every person is required to enter into who shall obtain a license to keep a tavern, he is to covenant that he will not suffer any person to tipple or drink more than is necessary in his house or on his premises. And any person, not having a license therefor, who shall sell by retail spirituous liquors to be drunk in his house, is to be deemed a keeper of a tippling house and fined the sum of sixty dollars. The license thus referred to can only be a license to keep a tavern, or a license granted to a coffee-house keeper, by the authorities of a town or city authorized to grant such licenses; because the statutes on the subject do not make mention of any other description of license, which authorizes a sale of spirituous liquors by retail, which may be drunk in the house where they are sold.

It does not follow, however, that every applicant who proves his qualifications to keep a tavern, has a right to a tavern license. The county court has a discretion upon the subject, and should only grant a license, if such a house be necessary for the public convenience, at the time and place designated in the application.

The city authorities have precisely the same power. They have a discretion, but not an arbitrary and

CITY OF LOUIS-
VILLE
vs.
M KEAN.
SAME.
vs.
N. VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.

6. The county court has a discretion in granting tavern licenses, and so has the city authorities, which is a judicial, not an arbitrary discretion, and unless it be shown that the discretion has been

CITY OF LOUIS-
VILLE
vs.
M. KEAN.
SAME
vs.
N. VACARO.
LUPE & HAM-
BRIGHT
vs.
BARBEE, &c.
and
GRAF & WEYD
vs.
SAME.
──────
abused there is
no cause of
complaint.

unlimited discretion on the subject. They also have the right to impose a city tax upon such taverns as do not retail spirituous liquors; but this right does not empower them to refuse to license all such as do retail spirituous liquors. Whether, as a matter of public policy, they ought to be invested with such a power, is a question that we are not called upon to decide; the question before us is, what power has the Legislature thought proper to confer upon them? In our opinion, although to some extent the power thus conferred is discretionary, it must be exercised, not as an arbitrary, but as a sound legal discretion.

They have not the right of prohibition, but only the right to decide how many taverns, having the privilege of selling spirituous liquors, are required within the city for the public accommodation and convenience, and whether the applicants have the proper legal qualifications to entitle them to a license. The existence of such taverns is not only sanctioned but deemed necessary by the general law, and the city authorities have no power to prohibit their existence within the city.

7. The manda-
mus is not the
appropriate re-
medy to control
the exercise of
a judicial dis-
cretion, and if
exercised can-
not be controll-
ed by such a
proceeding. (2
Bibb, 173; 19
John. 260; 10
Pick. 246; 5
Iredell N. Caro-
lina, 338; 2
Strange, 81; 1
Bur. 556.)

The applicants do not, however, allege in their petitions any abuse of discretion on the part of the general council; nor even allege that taverns are necessary at the places mention for the accommodation of the public. They seem to claim an absolute right to keep taverns, and to consider it as a duty on the part of the city authorities to grant them a license to do so. They have no such specific right. They do, it is true, state in their petitions that the mayor and general council claim the right to prohibit altogether the sale of spirituous liquors by retail within the city; and that their applications for license to keep taverns have been rejected on that ground. But it is obvious that such an unauthorized assumption of power by the city authorities, did not dispense with the necessity on the part of the applicants to show that they were entitled to such a license as they demanded. They had no just cause of complaint

against the defendants in their petition, unless they made it appear that they had a right to a license, which it was the duty of the defendants to grant them, but which they without any just cause, illegally withheld. Such a right they failed to manifest, and for this reason, if for no other, their application for a mandamus should have been overruled.

But the doctrine seems to be well settled that when the inferior tribunal, or the subordinate public agents have a *discretion* over the subject matter, that discretion cannot be controlled by mandamus, although it may have been improperly exercised. If there be a refusal to act upon the subject, or to pass upon the question on which such discretion is to be exercised, then the writ may be used to enforce obedience to the law; but when the question has been passed upon, it will not be used for the purpose of correcting the decision 2 *Bibb* 173; 19 *Johnson's report*, 260; 10 *Pickering*, 246; 5 *Iredell's North Carolina reports* 328; 2 *Strange* 81; 1 *Bur.* 556.

Now, in these cases the city authorities did not refuse to act, but acted on the applications, refused to grant licenses to keep taverns with the right to sell spirituous liquors therein, and merely gave to the applicants a license to keep taverns without any right to sell spirituous liquors by retail. In this they may have abused their discretion, under the belief that they were invested with an unlimited and arbitrary power over the subject. But having a discretion and having passed upon the question, the writ of mandamus will not lie to correct their decision.

It has been urged in argument, in opposition to this conclusion, that the owners of these houses will be left without remedy, unless the mandamus can be used to compel the city authorities to grant them tavern licenses, with the right to sell spirituous liquors by retail. They can however, no doubt, resort to other modes of redress, if it should become necessary to do so, but we cannot suppose that any such

VOL. XVIII.        2.

City of Louis-
ville
vs.
M. Kean.
Same
vs.
N. Vacaro.
Lupe & Ham-
bright
vs.
Barbee, &c.
and
Graf & Weyd
vs.
Same.

City of Louis-
VILLE
vs.
M. Kean.
Same
vs.
N. Vacaro.
Lupe & Ham-
bright
vs.
Barbee, &c.
and
Graf & Weyd
vs.
Same.

necessity will exist, when the city authorities are apprized of their duties upon the subject. It would be a willful abuse of discretion, to refuse such a license upon the ground, that they intended to prohibit altogether, the sale of spirituous liquors by retail within the city, knowing at the same time, that they had not the legal power to do it, so far as taverns were concerned. In their action heretofore they have been governed by a desire to comply with the will of the local public, as manifested by a vote on the question, whether or not any license should be granted for the sale of spirituous liquors by retail within the city—believing, no doubt, that they had the power to carry into effect the public will upon the subject. When, however, they have been apprized of their mistake as it regards the extent of their power, and have been informed of the law by which their power as well as their duty are to be regulated, there is no reason to suppose, that as public functionaries they will hesitate to comply with the requisitions of the law, and discharge faithfully the duties incumbent upon them.

With respect to the question raised in the argument of the cases, in relation to the constitutional power of the Legislature to pass a prohibitory liquor law, we only deem it necessary to remark, on the present occasion, that laws imposing a fine for retailing spirituous liquors without a license to keep a tavern, have been in force in the State for many years, and their validity has never been questioned upon constitutional grounds. And although such laws were in existence at the time the new constitution was framed, yet no provision was made in it for their abrogation or which is in any degree calculated to render their validity questionable. Nor do we suppose, that the constitutional power of the Legislature to prohibit the keeping of tipling houses, or the carrying on of any business which has a tendency to affect injuriously, the morals, the prosperity,

and the general welfare of the community, is in any degree doubtful.

Wherefore, in the two cases in which a mandamus was awarded by the court below, the judgments are reversed and causes remanded that the motion in each case may be overruled.