BOARD OF TRUSTEES OF KENTUCKY RETIREMENT SYSTEMS, Appellant,

v.

COMMONWEALTH of Kentucky, BOARD OF CLAIMS and Vicki Knable, Appellees.

No. 2006–CA–002107–MR.

Court of Appeals of Kentucky.

April 4, 2008.

Robert W. Kellerman, Frankfort, KY, for appellant.

Frank F. Chuppem, Louisville, KY, for appellee, Vicki Knable.

Before COMBS, Chief Judge; ACREE and MOORE, Judges.

*OPINION*

MOORE, Judge.

The Board of Trustees of the Kentucky Employee's Retirement Systems (KERS) appeals from an order of the Franklin Circuit Court after the circuit court dismissed KERS' petition for declaration of rights and injunctive relief.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This appeal centers around Vicki Knable's complaint filed with the Board of Claims in April 2005 against KERS regarding the purchase of "service credit" or "service." The purpose of purchasing service is to fund KERS for employer and employee retirement contributions that would have been paid over an employee's term of employment, so that the employee will be credited with years of service for determining eligibility for retirement. To understand Knable's claim, it is necessary to have the relevant statutory sections in mind.

Pursuant to KRS [1] 61.525(2)(a), membership in KERS consists of:

All persons who are employees of a department on the date the department first participates in the system, either in service or on authorized leave from service, and who elect within thirty (30) days following the department's participation, or in the case of persons on authorized leave, within thirty (30) days

of their return to active service, to become members and thereby agree to make contributions as provided in KRS 61.515 to 61.705[.] [2]

Kentucky Revised Statute 61.525(2)(b) allows a person who rejects membership to subsequently elect to become a member of KERS. The 2004 General Assembly amended KRS 61.552 to provide that purchases of service credit can only be made by members who are vested or have at least sixty months of service at the time of the purchase if they are under the age of sixty five. Knable fits into the latter category.

Apparently, in response to this amendment, in May of 2004, KERS sent Knable (and all other KERS members) a newsletter informing her about the pending change in the vesting requirement for KERS members. According to the newsletter, after July 13, 2004, KERS members, under the age of 65, needed sixty months of combined service with an agency that participates with KERS to become vested in the system. And, if members wanted to purchase past service with a participating agency after July 13, 2004, they must be vested. However, the newsletter explained that non-vested members could purchase past service provided they purchase the past service by July 12, 2004. According to the newsletter, "[p]ast service with an agency is service worked prior to the date the agency began participating in the retirement systems."

At the time of receiving the newsletter, Knable had worked for Seven Counties Services, Incorporated since 1978. The following year, Seven Counties became a participating agency with KERS. Knable,

---

1.  Kentucky Revised Statute.

2.  This statutory section has remained unchanged since Knable began working for a

participating department; however, the internal statutes cited therein now have different numbers.

however, did not elect to join KERS at that time.

According to her complaint, she began investigating the purchase of past service in 2003 for time she worked after Seven Counties began participating in KERS. She contends that she relied on the newsletter's defining of past service as that earned *prior* to an agency's participation in KERS. Knable believed that only past service fitting into this category had to be purchased by July 12. Therefore, Knable claimed she thought the deadline did not apply to her, and she did not purchase any past service prior to the deadline.

After July 2004, Knable attempted to purchase past service. However, KERS refused her request because she was not vested as she had not been a member of KERS for sixty months.

Knable filed an administrative appeal with KERS pursuant to KRS 61.645, seeking a reversal of the denial of her request to purchase past service for years she worked with Seven Counties after it began participating in KERS. In addition to her appeal with KERS, Knable also filed a complaint before the Board of Claims (BOC) on her claim that KERS' explanation for denying her purchase directly contradicted the information she received in the May 2004 newsletter. Knable accused KERS of negligent misrepresentation. According to Knable's theory, KERS' failure to honor the language in the May 2004 newsletter forced her to wait until she was a member for sixty months before allowing her to purchase any past service. Knable calculated that this would cause her to spend an extra $90,000.00 in order to purchase the past service that she wanted to buy, thereby, causing her damage.

Not long after Knable filed her claim, KERS responded with a motion to dismiss. KERS asserted that, pursuant to KRS 44.070, the BOC only has jurisdiction over claims in which a person has suffered either personal injury or property damage as the result of negligence on the part of the Commonwealth. According to KERS, Knable alleged neither personal injury nor property damage. KERS argued that the alleged future increase in the purchase price of the past service was not an injury to property. Alternatively, KERS argued that even if Knable had alleged property damage, it was speculative because she had yet to incur any increased cost because she had not purchased any past service.

Additionally, KERS averred that the BOC only has jurisdiction over negligence claims, and Knable's claim is for negligent misrepresentation rather than negligence. KERS argued that the elements for negligence and the elements for negligent misrepresentation are different. KERS asserted that negligent misrepresentation is more akin to fraudulent misrepresentation than negligence. Reasoning that negligence and negligent misrepresentation are different causes of action, KERS argued that the BOC did not have jurisdiction over Knable's claim.

Additionally, after KERS denied Knable's request to purchase past service, she filed, pursuant to KRS 61.645, an administrative appeal of that denial with KERS itself. According to KERS, its administrative appeal process is Knable's exclusive remedy.

After Knable responded to KERS' motion to dismiss, the BOC denied the motion. According to the BOC, Knable's claim of damages was not speculative but was readily ascertainable. Additionally, the BOC determined that a claim of negligent misrepresentation was in fact a claim of negligence, and it noted that KRS 61.645, which established KERS' administrative appeal process, does not mention that it is an exclusive remedy. Thus, the

BOC concluded that it had jurisdiction to hear Knable's claim.

After the BOC denied KERS' motion to dismiss Knable's claim, KERS filed a petition for declaration of rights and injunctive relief against Knable and the BOC with the Franklin Circuit Court. In KERS' petition, it claimed that the BOC lacked jurisdiction to hear Knable's claim because negligent misrepresentation was not a "true claim of negligence" and because Knable's exclusive remedy was KERS' own administrative appeal process. Based on the claim of lack of jurisdiction, KERS requested that the circuit court issue an injunction prohibiting the BOC from exercising jurisdiction over Knable's claim. Additionally, KERS asked for a declaratory judgment against the BOC, stating that the BOC had no jurisdiction over Knable's claim and a judgment against Knable that her exclusive remedy was KERS' own administrative appeal process, which would effectively dismiss her claim before the BOC.

After KERS filed its petition, Knable moved the circuit court to dismiss KERS' action. In her motion, Knable argued that the circuit court lacked jurisdiction to entertain KERS' declaratory judgment action because the BOC had yet to issue a final decision regarding the merits of Knable's claim. Additionally, Knable referred to KERS' declaratory judgment action as an appeal from the BOC's order denying KERS' dismissal motion, and Knable argued that the circuit court did not have jurisdiction to hear an appeal from the BOC's order because it was interlocutory.

In a brief order, the circuit court ruled that

[t]he Court has considered the pleadings and memoranda, and being presently prepared to rule that injunctive relief is not warranted because Petitioner has not demonstrated that it will be damaged, concludes as such and denies the Petitioner's request for temporary and permanent injunctive relief. The Court declines to enter a ruling or finding on the Petitioner's requests that Knable's statutory remedy of appeal be deemed her exclusive remedy, and that the Board of Claims does not have jurisdiction over Knable's claim, both of which may be asserted by the Petitioner should this matter come back before the Court following final adjudication by the Board of Claims. The Petition is dismissed.

Furthermore, the circuit court held Knable's action before the BOC in abeyance until KERS resolved Knable's administrative appeal. Additionally, the circuit court ordered that the BOC could adjudicate Knable's claim only if KERS ruled against Knable.

## II.  ANALYSIS

■ In KERS' appellate brief, it argues that the Franklin Circuit Court implicitly embraced the notion that KERS had to exhaust its administrative remedies before the BOC prior to filing its declaratory judgment action. KERS disagrees with this assessment, citing *Kentucky Board of Hairdressers and Cosmetologists v. Stevens,* 393 S.W.2d 886 (Ky.1965), and argues that it is not necessary to have previously exhausted administrative remedies if the only issue being raised is subject matter jurisdiction, which is a legal question not dependent upon disputed facts. We agree.

In *Stevens,* a declaratory judgment action was brought against the Kentucky Board of Hairdressers and Cosmetologists, based on an order that the plaintiff believed was void. The plaintiff alleged that the Board's order "was void on its face because it went beyond the Board's jurisdiction ... 'and there is no question of fact to be determined.'" *Id.* at 887. The trial court granted a motion to dismiss, taking

the position that the action was an appeal of an interlocutory order. On appeal, the Court disagreed, reasoning that

[t]he original complaint for a declaration of rights was not an appeal as prescribed by KRS 317.520(3). As mentioned, the complaint carefully recited that the action was premised upon the authority of *Goodwin v. City of Louisville*, 309 Ky. 11, 215 S.W.2d 557. In *Goodwin* this court recognized the right of direct judicial relief, without prior exhaustion of statutory administrative remedies, where the complaint raises an issue of jurisdiction as a mere legal question, not dependent upon disputed facts; the rationale of that decision is that judicial relief (as distinguished from administrative appeal process) is always available to directly attack a void administrative order. It is significant to note that in *Goodwin* the statutory administrative *appeal* process was recognized as appropriate if the court should determine that the administrative board possessed jurisdiction. The language of the opinion is:

"If the court should find that the acts of the plaintiffs are within the competence or jurisdiction of the Commission or come within the zoning statutes (as that the enlargement of the pool was in fact begun after the effective date of the law), the case may be referred to the Board of Adjustment and Appeals for the determination of such issue coming within its administrative authority or jurisdiction. This would leave any aggrieved party the right to pursue remedies by progressive appeals."

*Ibid.*, 215 S.W.2d at 561.

*Stevens*, 393 S.W.2d at 888 (italics added for cites).

    The doctrine of exhaustion of administrative remedies defined as the "'proper judicial administration mandates

judicial deference until after exhaustion of all viable remedies before the agency vested with primary jurisdiction over the matter.'" *Kentucky Retirement Systems v. Lewis*, 163 S.W.3d 1, 3 (Ky.2005) (quoting *Board of Regents of Murray State University v. Curris*, 620 S.W.2d 322, 323 (Ky. App.1981)). Exhaustion of remedies does have exceptions as explained in *Popplewell's Alligator Dock No. 1, Inc. v. Revenue Cabinet*, 133 S.W.3d 456 (Ky.2004), wherein the Supreme Court recognized two exceptions to the general and often relied upon rule that to appeal an agency's decision, one must previously exhaust all administrative remedies. These exceptions are: 1) where a regulation is void on its face; or 2) where continuation of the administrative process would be an exercise in futility. The latter exception applies "when a complaint 'raises an issue of jurisdiction as a mere legal question, not dependent upon disputed facts, so that an administrative denial of the relief sought would be clearly arbitrary.'" *Lewis*, 163 S.W.3d at 3 (quoting *Goodwin*, 309 Ky. 11, 215 S.W.2d at 559).

It is the futility exception to the exhaustion doctrine on which KERS relies. It maintains that its declaratory action was proper because the BOC was acting without subject matter jurisdiction, namely that it allowed Knable's negligent misrepresentation claim to proceed, although, statutorily, the BOC only has jurisdiction of claims against the Commonwealth or its agencies in negligence actions. Thus, if KERS is correct, the BOC's order allowing Knable's action to proceed would be void because the BOC would not have jurisdiction over her negligent misrepresentation claim. *See generally, Goodwin*, 309 Ky. 11, 215 S.W.2d 557.

    As a general rule, state agencies, carrying out integral state functions, have sovereign immunity. *See, e.g., Withers v.*

*University of Kentucky,* 939 S.W.2d 340, 344 (Ky.1997). Waiver of this immunity is a matter of legislative grace. *See University of Kentucky v. Guynn,* 372 S.W.2d 414, 416 (Ky.1963). The General Assembly enacted KRS 44.072 which

> began with a declaration of legislative intent with respect to the means whereby persons negligently injured by the Commonwealth must assert their claims. It continued:

>> The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth, any of its cabinets, departments, bureaus or agencies or any of its officers, agents or employees while acting in the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus or agencies and expressly waived as set forth by statute.

> After having declared its intention to otherwise preserve sovereign immunity, the General Assembly enacted an express waiver pursuant to the Board of Claims Act. KRS 44.073(2), states as follows:

>> The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents or employees thereof while acting within the scope of their employment by the Commonwealth, or any of its cabinets, departments, bureaus, or agencies.

>> . . . .

On the basis of the statutes quoted hereinabove and the general tenor of KRS 44.072 and KRS 44.073, we now believe that any construction of other statutes to result in a waiver of immunity which differs from the language of the Board of Claims Act is untenable. In various places throughout the Board of Claims Act, waiver of immunity is alluded to and in every instance **an express waiver is required.**

*Withers,* 939 S.W.2d at 345 (emphasis added). Accordingly, sovereign immunity must be expressly waived by the General Assembly. Its waiver cannot be assumed by the courts or even the BOC.

■ When enacted, the BOC was given exclusive jurisdiction over all claims for the negligent performance of ministerial acts by the Commonwealth or its agencies. The rub in the case at hand is obviously whether this jurisdiction includes negligent misrepresentation. We conclude that it does not.

■ Our conclusion that the BOC does not have jurisdiction over Knable's claim is based on the fact that KRS 44.072 was enacted as a waiver for immunity for negligence claims in 1946 and has been amended a number of times since then. However, negligent misrepresentation was not adopted by the Kentucky Supreme Court until 2004 in *Presnell Construction Managers, Inc. v. EH Construction, LLC,* 134 S.W.3d 575 (Ky.2004). And, although the Court in *Presnell* noted that the Court of Appeals had recognized tort actions for negligent misrepresentation,[3] these cases were well after the enactment of KRS 44.072. And, while KRS 44.072 has been amended several times, the general term of negligence has not been expanded to

---

3. *Presnell,* 134 S.W.3d at 580–81 (citing *Seigle v. Jasper,* 867 S.W.2d 476 (Ky.App.1993); *Morton v. Bank of the Bluegrass and Trust Co.,* 18 S.W.3d 353 (Ky.App.1999); *Chernick v. Fasig–Tipton Kentucky, Inc.,* 703 S.W.2d 885 (Ky.App.1986)).

include negligent misrepresentation, a form of negligence not recognized in Kentucky in 1946. Consequently, because negligent misrepresentation, which has elements separate from negligence, was not recognized as a tort at the time KRS 44.072 was enacted, and the General Assembly's not having expressly waived sovereign immunity to this tort after its adoption by the Kentucky Supreme Court, the BOC did not have jurisdiction over Knable's claim. Accordingly, the BOC's order to the contrary is void, and the KERS' action for declaratory action was properly taken having raised jurisdiction as a legal question. *See Stevens*, 393 S.W.2d at 888 (citations omitted). Consequently, we reverse the circuit court, and remand this case for entry of judgment consistent with this opinion.

ACREE, Judge, Concurs.

COMBS, Chief Judge, Dissents and Files Separate Opinion.

COMBS, Chief Judge, Dissenting:

I respectfully dissent. I would affirm the Franklin Circuit Court in its determination that the appeal of KERS is interlocutory in nature. The jurisdictional issue raised would more properly be the subject of an appeal taken after the exhaustion of administrative remedies. The disputed jurisdiction of the Board of Claims (BOC) over a claim of negligent misrepresentation is a matter of law to be determined by a court—not by an administrative agency.

As noted by the majority opinion, KRS 44.073(2) grants exclusive jurisdiction to the BOC "over all negligence claims for the **negligent performance** of ministerial acts against the Commonwealth...." (Emphasis added.) It is wholly unclear as a matter of law what the import of "negligent performance" might be **under these circumstances.** Such a question of law is to be determined *de novo* by a court acting in an appellate capacity—not by an admin-

istrative agency essentially assuming the authority to adjudicate the extent of its own jurisdiction.

In fact, an inherent conflict of interest clearly exists if the KERS can effectively nullify a ruling of the BOC that might be adverse to its own interests or position.

Such a controversy over jurisdiction is properly resolved by a court acting in an appellate capacity. And the Franklin Circuit Court properly exercised its legitimate jurisdiction in refusing to grant injunctive relief in this clearly interlocutory matter.

Our resolution of this matter is premature and should await exhaustion of the administrative process and an appropriate appeal of a final order to the Franklin Circuit Court.

Accordingly, I would affirm the Franklin Circuit Court.