**Rocky HAMBLEN, by and through Guardian, Yulonger BYARS, Appellant,**

v.

**KENTUCKY CABINET FOR HEALTH AND FAMILY SERVICES; Kentucky Department for Mental Health and Mental Retardation Services; Central State Hospital ICF/MR; John L. Kiesel, M.D.; and T. Richelle Jones, Appellees.**

No. 2009–CA–000369–MR.

Court of Appeals of Kentucky.

Sept. 17, 2010.

Oliver H. Barber, Jr., Louisville, KY, for appellant.

D. Brent Irvin, Frankfort, KY, for appellees, Kentucky Cabinet for Health and Family Services; Kentucky Department for Mental Health and Mental Retardation Services; Central State Hospital ICF/MR; and T. Richelle Jones.

W. Gregory King, Seth A. Gladstein, Louisville, KY, for appellee, John L. Kiesel, M.D.

Before TAYLOR, Chief Judge; COMBS, Judge; HENRY,[1] Senior Judge.

*OPINION*

TAYLOR, Chief Judge:

Rocky Hamblen, by and through his Guardian, Yulonger Byars, brings this appeal from a November 12, 2008, summary judgment of the Jefferson Circuit Court dismissing the complaint in its entirety.

---

1. Senior Judge Michael L. Henry sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes 21.580.

We affirm in part, vacate in part, and remand.

Rocky Hamblen suffers from profound mental retardation and has been a resident of Central State Hospital ICF/MR since 1977. While Hamblen is approximately 61 years old, he has an "adaptive age equivalent of one year and three months" and requires full-time assistance to meet his daily living needs. Complaint at 2. Hamblen also has been diagnosed with the following physical ailments: mild dsyphagia, retinitis pigmentosa, hypothyroidism, osteopenia, chronic hyponatremia, chronic constipation, hepatitis B antigen positive, tardive dyskinesia, and Kienboch's disease (avascular necrosis lunate).

Hamblen, through his guardian, Yulonger Byars, (referred to as appellant) filed a complaint against Kentucky Cabinet for Health and Family Services (Cabinet), Kentucky Department for Mental Health and Mental Retardation Services (Department), Central State Hospital ICF/MR (Central State), John L. Kiesel, M.D., and T. Richelle Jones (collectively referred to as "appellees"). The complaint was filed "to redress injuries sustained by ... Hamblen, during the term of his care, custody and control while a resident at Central State ... and to compel [appellees] to provide proper and appropriate treatment to ... Hamblen." Complaint at 2. Appellant alleged that Hamblen was subjected to physical abuse, verbal abuse, and neglect by Central State staff. The abuse and neglect resulted in eye bruises, ear bruises, face fractures, head injuries, and lacerations. Appellant claimed that appellees violated sundry duties under Kentucky Revised Statutes (KRS) 202A.191, KRS 202B.050, KRS 202B.060 and 908 Kentucky Administrative Regulations (KAR) 3:010. Appellant sought both monetary damages and prospective injunctive relief.

Appellees answered and subsequently filed a notice of removal to the United States District Court. In support thereof, appellees argued that appellant raised claims for relief under 42 U.S.C. § 1983. The action was removed to the United States District Court. Appellant then filed a motion to remand the action to Jefferson Circuit Court. In the motion, appellant argued that he only raised state law claims and did not raise any claims under 42 U.S.C. § 1983. The United States District Court ordered the action remanded to the Jefferson Circuit Court and concluded that "no claims for relief under [42 U.S.C.] Section 1983 were set out by" appellant.

After remand to the circuit court, appellees filed a motion for summary judgment. In the motion, appellees argued they were immune from suit under both sovereign immunity and governmental immunity. By summary judgment, the circuit court dismissed appellant's complaint in its entirety upon the basis of governmental immunity. This appeal follows.

Appellant contends that the circuit court erred by rendering summary judgment in favor of appellees and dismissing his complaint upon the basis of governmental immunity. Summary judgment is proper where there exists no material issue of fact and movant is entitled to judgment as a matter of law. Kentucky Rules of Civil Procedure 56; *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). In rendering summary judgment, the circuit court concluded that appellant's claims for monetary damages and for prospective injunctive relief were barred by the doctrine of governmental immunity and specifically held:

> Hamblen's Complaint seeks a judgment against the Defendants, an order compelling the Defendants to perform their respective duties according to the applicable statutes and regulations, com-

pensatory damages for physical and emotion[al] damages sustained by Hamblen and Byars, . . . .

There is no doubt that the state agencies are entitled to governmental immunity. *Yanero v. Davis*, 65 S.W.3d 510, 519 (Ky.2001). Therefore, Hamblen's [sic] and Byars's [sic] claims for compensatory damages against them must fail. Hamblen's Complaint names the two remaining Defendants, Dr. Kiesel and Jones in their official capacities as medical director and director, respectively. When an officer or employee is sued in his/her representative capacity, such as here, the officer's or employee's actions are entitled to the same immunity as the agency is entitled. *Id.* at 522. Thus, Dr. Kiesel and Jones enjoy the same protection of governmental immunity as their agency employers. Hamblen's [sic] and Byars's [sic] claims for compensatory damages against them must fail.

The same is true of Hamblen's [sic] and Byars's [sic] claims for prospective injunctive relief. The doctrine of sovereign immunity precludes maintaining any suit against the state without the state's express consent or express waiver of that immunity. *Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001). The Commonwealth has not waived its immunity in this instance. The claims for prospective injunctive relief must fail.

Resolution of this appeal is not dependent upon disputed factual issues but rather centers upon a question of law—whether the circuit court erred by determining that appellant's claims for monetary damages and for prospective injunctive relief were barred by governmental immunity.

To answer this question, we examine the law of immunity as it pertains to appellant's claims.

■ In this Commonwealth, our Supreme Court has recognized that governmental immunity shields a state agency from civil liability when performing a governmental function. *Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001); *Autry v. W. Ky. Univ.*, 219 S.W.3d 713 (Ky.2007). This governmental immunity generally operates as a complete bar to claims for both monetary damages and injunctive relief.

■ Appellant claims entitlement to both monetary damages and prospective injunctive relief based upon appellees' violation of sundry state laws (KRS 202A.191, KRS 202B.050, KRS 202B.060, and 908 KAR 3:010). Appellees are divided into two categories—state agencies and individuals sued in their official capacities.[2] As state agencies or officials sued in their official capacities, each would be entitled to governmental immunity if performing a governmental function as opposed to a proprietary function.[3] *Yanero*, 65 S.W.3d 510. A governmental function is generally a function that is integral to state government. *Bd. of Trs. of Ky. Ret. Sys. v. Com., Bd. of Claims*, 251 S.W.3d 334 (Ky.App. 2008). Thus, appellees would be clothed with governmental immunity if performing a governmental as opposed to a proprietary function.

■ From the record, it is apparent that appellees were performing the functions of. administering programs for individuals with mental illnesses and providing services for the treatment of mentally im-

---

2.  The circuit court held that Rocky Hamblen, by and through his Guardian, Yulonger Byars, named John L. Kiesel, M.D., and T. Richelle Jones in their respective official capacities only and not in their individual capacities. This holding is not challenged on appeal.

3.  It is well established that a state officer who is sued in his official capacity is afforded the same immunity as the pertinent governmental entity. *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2001).

paired individuals. KRS 12.020; KRS 194A.010; KRS 194A.030. These functions were undoubtedly vital functions carried out under the direct auspices of state government and were functions integral to state government. Indeed, the Department, the Cabinet, and Central State are funded by the state. *See Autry v. W. Ky. Univ.*, 219 S.W.3d 713 (Ky.2007). As appellees were clearly performing governmental functions, we, thus, conclude that appellees are entitled to assert the defense of governmental immunity. Appellant, however, maintains that an exception to the defense of immunity permits his claim for prospective injunctive relief against appellees to proceed and cites to the *Ex parte Young* exception.

██ The *Ex parte Young* exception is a limited exception to the immunity defense. This exception was first expressed over a century ago in the United States Supreme Court case of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), and has since enjoyed wide-spread contemporary acceptance.[4] The Kentucky Supreme Court has also approvingly recognized the *Ex parte Young* exception. *See Bd. of Trs. of the Univ. of Ky. v. Hayse*, 782 S.W.2d 609 (Ky.1989) (*overruled on other grounds by Yanero v. Davis*, 65 S.W.3d 510 (Ky.2001)).

Under the *Ex parte Young* exception to immunity, a court may grant prospective injunctive relief against a state officer to compel compliance with federal law. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 124 S.Ct. 899, 157 L.Ed.2d 855 (2004). It is said that immunity does not bar such an action because a state officer could not be given authority to violate federal law so that the suit is not against the state authority itself. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441; *Am. Bank and Trust Co. of Opelousas v. Dent*, 982 F.2d 917 (5th Cir.1993). The *Ex parte Young* exception is recognized as a necessary legal fiction utilized to maintain the supremacy of federal law.[5] *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997); *Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006).

██ To trigger the *Ex parte Young* exception, a party must name a state officer and must seek prospective injunctive relief against said officer for compliance with federal law or a federal constitutional provision. The *Ex parte Young* exception does not permit an action directly against the state or state agency but only against a state officer. And, the *Ex parte Young* exception cannot be utilized to compel a state officer to comply with state law. *Pennhurst State School & Hosp.*, 465 U.S. 89, 104 S.Ct. 900; *Frew*, 540 U.S. 431, 124 S.Ct. 899. We now undertake an analysis of appellant's claims against appellees based upon the law as recited above.

Per the *Ex parte Young* exception to immunity, it was incumbent upon appellant to have named a state officer in his complaint and to have sought prospective in-

---

4. *See Ray v. Atl. Richfield Co.*, 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978); *Papasan v. Allain*, 478 U.S. 265, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 122 S.Ct. 1753, 152 L.Ed.2d 871 (2002); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir.2008); 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Const. L.* § 2.12(b)(xii) (4th ed.2007).

5. It is reasoned that the Eleventh Amendment to the United States Constitution was never intended "to subvert the supremacy clause by granting immunity to the states or their officials from judicial orders to comply with federal law." 1 Ronald D. Rotunda & John E. Nowak, *Treatise on Const. L.* § 2.12(b)(xii) (4th ed.2007).

junctive relief against the named officer for compliance with federal law or federal constitutional provision. Herein, appellant only set forth alleged violations of sundry state statutes and regulations in his complaint; he did not raise a single claim for relief under either federal law or federal constitutional provision. Even though appellant argues that he did assert federal claims under 42 U.S.C. § 1983, the record clearly refutes this argument.

When appellees removed this case to federal district court, appellant filed a motion to remand to Jefferson Circuit Court and argued that he asserted only state law claims. In fact, appellant specifically disavowed asserting any claims under 42 U.S.C. § 1983 in the federal district court action. Also, in the Jefferson Circuit Court's summary judgment dismissing appellant's complaint, the circuit court did not address any claims under 42 U.S.C. § 1983. Therefore, we do not believe appellant properly raised a claim for relief under 42 U.S.C. § 1983 or any other claim arising under federal law. For this reason, we conclude that the *Ex parte Young* exception is inapplicable. However, our inquiry does not end here. A remedy is available to compel a public officer to comply with state law—the writ of *mandamus*.

▇▇▇▇ From time immemorial, a writ of *mandamus* has been available to compel a public officer to perform a ministerial duty, and, in this Commonwealth, the writ has been widely utilized for over 150 years in such fashion. *Marbury v. Madison*, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803);[6] and *City of Louisville v. Kean*, 57 Ky. 9, 18 B. Mon. 9 (1857); *Crawford v. Lewis*, 170 Ky. 589, 186 S.W. 492 (1916); *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607 (Ky.2002). To properly invoke *mandamus* relief, a petitioner must name a public officer and seek to compel that officer to perform a ministerial act.[7] *Appalachian Reg'l Healthcare*, 85 S.W.3d 607. As more thoroughly explained:

> The office of mandamus is to compel the performance of a duty resting on the person to whom it is sent. Mandamus is, therefore, in substance a personal action that rests on the averred and assumed fact that the defendant has neglected or refused to perform a personal duty. (Footnotes omitted.)

55 C.J.S. *Mandamus* § 6 (2009).

▇▇▇▇ *Mandamus* is directed toward the individual public officer and not the officer's office.[8] Indeed, the writ of *man-*

---

**6.** In the federal realm, 28 U.S.C. § 1361 has presently conferred jurisdiction to the federal district court to issue a writ of *mandamus* against a federal officer or agency for performance of a duty to petitioner. 52 Am. Jur.2d *Mandamus* § 10 (2000).

**7.** Broadly speaking, a ministerial duty or act is generally "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). A discretionary duty or act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment." *Id.* And, our caselaw is replete with cases distinguishing between a ministerial act and a discretionary act, so we need not delve into this overly saturated area of law.

*See Rowan County v. Sloas*, 201 S.W.3d 469 (Ky.2006); *Collins v. Com. of Ky. Natural Res. and Envtl. Prot. Cabinet*, 10 S.W.3d 122 (Ky. 1999); *Yanero*, 65 S.W.3d 510; *Autry v. W. Ky. Univ.*, 219 S.W.3d 713 (Ky.2007).

**8.** *Louisville Gas & Elec. Co. v. Bosworth, Auditor*, 169 Ky. 824, 185 S.W. 125 (1916) (holding that a writ of *mandamus* only compels performance of a ministerial duty by a public officer and may not be utilized to compel performance by state or state entity). *See also Bruner v. City of Danville*, 394 S.W.2d 939 (Ky.1965); 52 Am.Jur.2d *Mandamus* § 92 (2000); *but see, City of Louisville v. Martin*, 284 Ky. 490, 144 S.W.2d 1034 (1940) (recognizing that the writ of *mandamus* may be utilized against both public officers and public agencies.)

*damus* is only effective to compel performance of a ministerial act if there exist "some officer or officers in being who have the power and whose duty it is to perform the act." 52 Am.Jur.2d *Mandamus* § 92 (2000). The writ of *mandamus* is quintessentially injunctive in nature and only operates prospectively. 52 Am.Jur.2d *Mandamus* § 451 (2000). And, it constitutes an extraordinary remedy that will only lie in the absence of another adequate legal remedy. *Hoskins v. Maricle*, 150 S.W.3d 1 (Ky.2004).

Some may argue that sovereign/governmental immunity or qualified official immunity operates as a bar to *mandamus* relief. This argument simply represents a fundamental misunderstanding of the writ of *mandamus*.

In the seminal case of *Marbury v. Madison*, 5 U.S. 137, 150, 1 Cranch 137, 2 L.Ed. 60 (1803), the United States Supreme Court explained that the writ of *mandamus* is essential to a well-ordered democracy where no public officer "should be above the compulsion of law." The Supreme Court elaborated that "[t]he government of the United States has been emphatically termed a government of laws, and not of men." *Id.* at 163. Wherefore, any person who holds public office must be held amenable to judicial process to compel performance of ministerial duties. *Id.* So, the writ of *mandamus* was recognized as the appropriate remedy to compel such performance of ministerial duties. *Marbury*, 5 U.S. 137. Without the writ of *mandamus*, no viable legal remedy would exist to command performance of such ministerial duties by public officers. It is said that *mandamus* was devised "to prevent disorder from a failure of justice." *Labette County Com'rs v. U.S.*, 112 U.S. 217, 5 S.Ct. 108, 28 L.Ed. 698 (1884).

Accordingly, the very essence of the writ of *mandamus* eludes the defense of immunity. It is a creature conceived centuries ago out of legal necessity and adopted in this Country and in this Commonwealth to fulfill the promises of democracy.[9] Indeed, the caselaw in this Commonwealth also recognizes that immunity is no bar to the writ of *mandamus*. *City of Louisville v. Martin*, 284 Ky. 490, 144 S.W.2d 1034 (Ky.App.1940); *Watkins v. Dept. of Highways of Com. of Ky.*, 290 S.W.2d 28 (Ky. 1956) *overruled on other grounds by Foley Const. Co. v. Ward*, 375 S.W.2d 392 (Ky. 1963). In short, the continued validity of the writ of *mandamus* to compel performance of ministerial duties by public officers is simply beyond cavil.

In this case, appellant named two public officers—John L. Kiesel, M.D., and T. Richelle Jones—in his complaint. Therein, appellant alleged that these officers failed to perform ministerial duties as set forth in sundry state statutes and regulations. Statutes and regulations may, of course, impose ministerial duties upon public officers. *Bd. of Educ. of Floyd Co. v. Moore*, 264 S.W.2d 292 (Ky.1954); *Appalachian Reg'l Healthcare*, 85 S.W.3d 607. It, thus, appears that appellant has raised the necessary allegations for *mandamus* relief.

▆▆▆ As hereinbefore set forth, immunity is no bar to *mandamus* relief. Hence, we conclude that the circuit court prematurely rendered summary judgment dismissing appellant's claim for *mandamus* relief (prospective injunctive relief). *See City of Catlettsburg v. Davis' Adm'r*, 262 Ky. 726, 91 S.W.2d 56 (1936); *Young v. Jefferson Co. Election Com'n*, 304 Ky. 81, 200 S.W.2d 111 (1947). Upon remand, the circuit court should determine whether appellant is entitled to *mandamus* relief in

**9.** In *Marbury v. Madison*, 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803), the United States Supreme Court observed that the writ of *mandamus* was available in England and was issued by the Court of the King's bench.

accordance with the principles of law outlined herein. As to all other claims, we are of the opinion that the circuit court properly rendered summary judgment dismissing same.

We view appellant's remaining contentions as either meritless or moot.

For the foregoing reasons, the summary judgment of the Jefferson Circuit Court is affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion.

COMBS, Judge, concurs.

HENRY, Senior Judge, dissents in part, concurs in part, and files separate opinion.

HENRY, Senior Judge, dissenting in part and concurring in part:

I respectfully dissent from so much of the majority opinion as would vacate the judgment and opinion of the trial court granting summary judgment in favor of Dr. Kiesel and remand for consideration of *mandamus* relief. While I agree with the majority's well-written explanation of the application of the writ, I am of the opinion that in this particular case the appellant's claims relating to such relief are purely speculative, simply restate the alleged retrospective harms, and do not rise to the extraordinary level necessary to justify the issuance of a writ. Accordingly, I would affirm the opinion and judgment of the trial court in its entirety.