Janet OWEN, Appellant

v.

UNIVERSITY OF KENTUCKY, Appellee

2014–SC–000137–DG

Supreme Court of Kentucky.

RENDERED: MAY 5, 2016

Counsel for Appellant: Edward E. Dove, Lexington, KY

Counsel for Appellee: William Thro, University of Kentucky, Stephen L. Barker, Katherine Coleman, Bryan Howard Beauman, Jamie Wilhite Dittert, Martha Lewis Alexander, Sturgill, Turner, Barker & Moloney, PLLC

OPINION OF THE COURT BY
CHIEF JUSTICE MINTON

Under our established election-of-remedies jurisprudence in Kentucky, a plaintiff seeking recovery under a civil rights theory must choose to pursue her claim either through the administrative system or in a court of law. Choosing first the administrative route, Janet Owen, a former University of Kentucky employee, received final orders from the Kentucky Commission on Human Rights dismissing her claim for discriminatory employment practices based on a physical disability. She then sought recovery in circuit court, but that court granted summary judgment in favor of UK because Owen had elected to pursue her remedy through the administrative process.

We granted discretionary review in this case to determine whether a 1996 amendment to the Kentucky Civil Rights Act substantively alters whether the election-of-remedies rule applies to actions filed in courts of law after availing oneself to the administrative process. We hold that the amendment forces us to reinterpret our precedent and that the text of the statute no longer bars such claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Janet Owen was formerly employed as a nursing-care technician at the University of Kentucky's Chandler Medical Center. She was terminated in March 2009. Shortly thereafter, she filed a complaint with the Kentucky Commission on Human Rights (KCHR), contending that her ter-

mination was premised on a physical disability and her recent health issues. Following KCHR procedure, the Commission dually filed her claim with the Equal Employment Opportunity Commission (EEOC). The EEOC issued UK a Notice of Charge of Discrimination, detailing that it would defer to the KCHR's investigation, and requesting a statement and certain documents from UK in response.

A few months later, the KCHR informed both Owen and UK that Owen's claim would be dismissed. This was a "final and appealable order," but it also provided Owen the right to seek reconsideration within ten days of receiving the dismissal.[1] She did just that, and a new investigation commenced that reviewed the previous investigation and also conducted additional discovery, requesting even more information from UK. The second investigation reaffirmed the dismissal in another final and appealable order, and informed Owen she had thirty days after receipt to file an appeal in state circuit court. She opted not to appeal the order. Around the same time, the EEOC likewise issued a Dismissal and Notice of Rights, adopting the KCHR's findings. But the EEOC's notice informed Owen that she had the immediate right to sue under *federal law*, in either state or federal court.

Rather than pursuing the EEOC's federal claim or seeking judicial review of the KCHR final order, Owen instead filed an original action in circuit court under the Kentucky Civil Rights Act (KCRA). Her discrimination complaint mirrored the issues she brought before the KCHR and the EEOC. Following nearly two years of discovery, UK moved the court for summary judgment arguing that the trial court had no jurisdiction over the claim. Specifically, UK relied on prior interpretations of KRS 344.270 as an "election of remedies," and because Owen elected to pursue her claim through the administrative process, this particular claim was unavailable. The trial court agreed and granted UK summary judgment.

Owen appealed the ruling to the Kentucky Court of Appeals. The panel affirmed the trial court's judgment, holding that KRS 344.270 indeed acts as an election of remedies. Because Owen brought her claim to an administrative commission and received a final order of disposition for her case, the panel held that she may not file the same claim later in state court. This Court has not interpreted this provision since 1995, and the statute was amended in 1996. So we granted discretionary review to determine whether the 1996 amendment substantively alters our understanding of the statute as an election-of-remedies provision. And we hold that it does.

## II. ANALYSIS.

On appeal, Owen contends that the trial court erroneously granted summary judgment in favor of UK because KRS 344.270 does not bar her subsequent original action in circuit court. She alternatively argues that if the statute in fact includes an election-of-remedies provision, summary judgment remains improper because such a scheme would deny her due process of law and her state constitutional right to a jury trial.[2] On summary judgment review, the appropriate standard for our analysis is "whether the record, when examined in its entirety, shows there is 'no genuine issue as to any material fact and the moving party is entitled to judgment

---

1. *See* KRS 344.200(3).

2. Ky.Const. § 7.

as a matter of law.' " [3] All evidence will be viewed in favor of the nonmoving party, with ambiguities resolved in its favor.[4] Because this analysis disputes no factual findings, we review the following legal issues de novo.[5]

### A. The Kentucky Civil Rights Act Procedures.

The Kentucky Civil Right Act offers a comprehensive scheme to curb discriminatory employment practices based on "race, color, religion, national origin, sex, age forty (40) and over, because the person is a qualified individual with a disability, or because the individual is a smoker or non-smoker." [6] For alleged violations of these civil rights protections, the KCRA offers two methods for bringing a claim for unlawful discrimination. The first is simply filing an original action in circuit court.[7] The second involves going through statutorily created human rights commissions, most notably the KCHR, and availing oneself of the administrative process.[8] Owen chose to pursue her claim against UK under this second method.

The KCHR consists of eleven members, with one member from each Supreme Court district and four at-large members.[9] The Commission exists to "encourage fair treatment for, to foster mutual understanding and respect among and to discourage discrimination against any racial or ethnic group or its members." [10] Although the statute prescribes a vast array of powers, the KCHR is empowered to receive and investigate complaints relating to discrimination, to offer recommendations to eliminate any injustices it discovers, and to hold public hearings and request the attendance of witnesses.[11] And the statute also supplies a detailed administrative procedure for reviewing complaints presented to the KCHR.[12]

Owen's administrative claim was processed in compliance with the statute's procedures. Her initial complaint was reviewed in a timely matter and ultimately dismissed upon a finding that there was no probable cause UK discriminated against her. She then invoked her right to reconsideration, and a more-detailed investigation yielded the same result. At the end of the administrative process, Owen pos-

3. *Hammons v. Hammons,* 327 S.W.3d 444, 448 (Ky. 2010) (quoting CR 56.03).

4. *Id.*

5. *See Schmidt v. Leppert,* 214 S.W.3d 309, 311 (Ky. 2007) ("Since findings of fact are not at issue in this case, the trial court's decision is entitled to no deference.").

6. KRS 344.040.

7. KRS 344.450 ("Any person injured by any act in violation of the provisions of this chapter shall have a civil cause of action in Circuit Court to enjoin further violations, and to recover the actual damages sustained, together with the costs of the law suit.").

8. The statute also provides for the creation of local human rights commissions, and such agencies do in fact exist within the current administrative structure. The conflict be-tween the state and local commissions was a critical driving force in our notable decision in *Vaezkoroni v. Domino's Pizza, Inc.,* 914 S.W.2d 341 (Ky. 1995). But because Owen never took her complaint to a local commission, that aspect of the KCRA has no bearing on today's opinion.

9. KRS 344.150.

10. KRS 344.170.

11. KRS 344.180(3)–(4). *See also* KRS 344.190 (asserting that the KCHR has the authority to "require answers to interrogatories, compel the attendance of witnesses, examine witnesses under oath or affirmation in person or by deposition, and require the production of documents relevant to the complaint").

12. KRS 344.200.

sessed two final and appealable orders from the KCHR and one authorization from the EEOC to file an original action under federal law, either in state or federal court. Today's issue commenced when Owen decided to forego these options and file an original action based on the protections of the KCRA in state circuit court, asserting the same facts and issues as her complaints before the KCHR. So the sole issue before us today is whether the procedures outlined in the KCRA bar Owen from taking this second (or arguably, third) bite of the cherry against UK.

It must be clear at the outset that the first rule of statutory interpretation is that the text of the statute is supreme. Upon review, "the words of the text are of paramount concern, and what they convey, in their context, is what the text means." [13] In determining what the text means, words will be presumed to be understood in their ordinary meanings, unless context mandates otherwise. [14] But most significantly, we will not construe a meaning that the text of the statute cannot bear.

The KCRA attempts to broker the relationship between complaints investigated by human rights commissions and those brought as original actions in courts of justice. The current version of KRS 344.270 provides that:

> The provisions of KRS 13B.140 notwithstanding, commission shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance under KRS 344.450 is pending. A state court shall not take jurisdiction over any claim of an unlawful practice under this chapter while a claim of the same person seeking relief for the same grievance is pending before the commission. **A final determination by a state court or a final order of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other administrative action or proceeding brought in accordance with KRS Chapter 13B by the same person based on the same grievance.**

Both the trial court and the Court of Appeals construed this provision to require plaintiffs to make an election of remedies. Because Owen received a final and appealable order from the KCHR, both courts below determined that there is no jurisdiction for her claim in state court.

The election-of-remedies doctrine is a common law rule deeply rooted in Kentucky law. [15] It primarily applies when "a party has two inconsistent forms of relief which are available for a single injury, that party may be forced to elect which will be pursued." [16] Kentucky applies the doctrine when a party has "two inconsistent and contradictory methods of recovery for a single event. The act of seeking one precludes the other." [17] Remedies are inconsistent if they, "proceed from opposite and irreconcilable claims of right." [18] And

---

13. Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 56 (2012).

14. *Id.* at 69.

15. *See Collings v. Scheen*, 415 S.W.2d 589, 591 (Ky. 1967) ("The doctrine of election of remedies is, of course, thoroughly entrenched in this jurisprudence of this State, and it is also received and almost universally approved.").

16. Ronald W. Eades, Kentucky Law of Damages § 1:6 (2016).

17. *Id.* (emphasis added).

18. *Id.* (quoting *Reliance Ins. Co. v. Commonwealth Dept. of Transp.*, 576 S.W.2d 231, 237 (Ky.App. 1978)).

they must be "so inconsistent that a party could not logically assume to follow one without renouncing the other."[19] So under our law, we traditionally invoke the doctrine not only when remedies themselves are inconsistent, but also when remedies are offered through seemingly contradictory methods.

In *Vaezkoroni v. Domino's Pizza, Inc.*, we expressly applied the election-of-remedies doctrine to the procedural strictures of KRS 344.270.[20] In that case, we recognized that KRS Chapter 344 offers two distinct paths for a plaintiff seeking redress for workplace discrimination: one administrative and one judicial.[21] We made clear that "Once any avenue of relief is chosen, the complainant must follow that avenue through to its final conclusion."[22] This Court accordingly extended the election-of-remedies doctrine to a plaintiffs decision of which avenue she chooses to pursue her claim. This was the first and only time we took this position, although our holding has been repeatedly reaffirmed by the Court of the Appeals in the two decades since our ruling in *Vaezkoroni*.[23]

Shortly after the *Vaezkoroni* decision, the General Assembly amended the text of KRS 344.270. So the critical question is whether the 1996 amendment to the statute substantively alters our earlier interpretation requiring an election of procedural avenues.[24] The Court of Appeals' has consistently followed our holding in *Vaezkoroni*, today we must conclude that the text of the statute simply cannot bear that meaning. The following was the original text, in relevant part, at the time of *Vaezkoroni*:

> A final determination by a state court or the commission of a claim alleging unlawful practice under KRS 344.450 shall exclude any other action or proceeding brought by the same person based on the same grievance.[25]

Under this standard it is easy to see how we reached the *Vaezkoroni* rule. Once a claimant obtains a final determination from state court or the commission[26], the statute bars the claimant from bringing the exact same claim to another forum the statute makes available to hear cases. Use of the terms "action" and "proceeding" entail broad reading, seemingly meaning to bar either judicial or administrative avenues for seeking relief under KRS Chapter 344.

---

**19.** *Id.*

**20.** 914 S.W.2d 341 (Ky. 1995).

**21.** *Id.* at 343.

**22.** *Id.*

**23.** *See McKissic v. Commonwealth Transp. Cabinet*, 334 S.W.3d 885 (Ky.App. 2010); *Brown v. Diversified Decorative Plastics, LLC*, 103 S.W.3d 108 (Ky.App. 2003) (distinguished on other grounds); *Wilson v. Lowe's Home Center*, 75 S.W.3d 229 (Ky.App. 2001) (distinguished on other grounds).

**24.** *See Herrera v. Churchill McGee, LLC*, 680 F.3d 539, 545 (6th Cir. 2012) ("The Supreme Court of Kentucky has not interpreted § 344.270 since the 1996 amendment"). The Sixth Circuit therefore used Court of Appeals' decisions as "relevant data" to predict that we would continue to apply the election of remedies doctrine the same under the 1996 amendment. *Id.* at 546.

**25.** KRS 344.270 (1984).

**26.** "Commission" here most clearly refers to the KCHR, described in great detail in prior subsections of the KCRA. Upon first glance, it is unclear whether "commission" is used to refer back to the KCHR, or in the alternative, to mean "the act of committing, performing, or doing." *Webster's Third New International Dictionary* (1961). There is little doubt that this was not a deftly drafted statute, but a careful review of the context surrounding the provision and the act itself reveals, the legislature was clearing referring to the KCHR, or related local commissions.

■ But in 1996, and following our decision in *Vaezkoroni*, the General Assembly amended the statute to state:

A final determination by a state court **or a final order** of the commission of a claim alleging an unlawful practice under KRS 344.450 shall exclude any other **administrative** action or proceeding **brought in accordance with KRS Chapter 13B** by the same person based on the same grievance.[27]

The amendment includes qualifiers to what we considered open-ended terms under the original language of the statute. The word "action" was amended to include "administrative action," and "proceeding" now means "proceeding brought in accordance with KRS Chapter 13B." By modifying both terms that arguably could have covered claims filed in courts of law, there is nothing remaining in the statute to bar claims filed in circuit court, despite final and appealable orders dismissing the exact same claim filed in the administrative agency.

When the legislature amends a statute, other than through consolidation or simple stylistic changes, we presume the change in words changes the meaning of the law.[28] UK contends that the 1996 amendment simply signifies stylistic changes, or that the General Assembly only intended to incorporate KRS Chapter 13B procedures to the KCRA.[29] It is immaterial to us whether the changed language was intended to incorporate newer administrative schemes or if in fact it represented a legislative repudiation of *Vaezkoroni*. The text is law. When the text changes, the changed text controls. The additional words to this provision of the statute substantively refine the meaning of the terms

of the text. Where before "action" could encompass any legal action filed in any judicial or quasi-judicial forum, the 1996 amendment limits its meaning to include "administrative actions" alone. The same limitation is true of "proceedings." We see no situation where we can soften such changes as stylistic to preserve our prior understanding of the law. As such, our holding in *Vaezkoroni* and its progeny in the Court of Appeals cannot stand in wake of the changes to the statute's text.

We realize the procedural mess created by today's ruling. Ensuring a preclusive effect to all final determinations resolved under this statutory structure is a logical and practical way for balancing the desire to protect the citizens of the Commonwealth from invidious discrimination while also seeking to impose judicially manageable standards for processing those varieties of claims. Under the statute as currently written, the General Assembly seems to have created the ability of civil-rights claimants to force defendants to fight this battle on multiple fronts. And even more baffling, although the statute as written allows litigants whose claims fail at the administrative level a fresh start in trial court, it expressly precludes the opposite. This structure will most certainly result in every prospective civil-rights plaintiff filing a claim with the agency— with the ability to take advantage of the more-deferential standard of review we afford to administrative rulings should she prevail—and then proceeding to courts of law if the agency determines her claim has no merit.

■ We have serious concerns about this process following today's opinion, ranging from the potential for double-re-

---

27. KRS 344.270 (2016)

28. *See* Scalia & Garner, *supra* note 13 at 256.

29. KRS 13B was enacted in 1994, one year prior to *Vaezkoroni*, and two years before the amendment to KRS 344.270.

covery to the jigsaw puzzle left for appellate courts in determining which forum's decision to consider precedent upon review. But we cannot displace the legislature's judgment for our own. Although the 1996 amendment creates an odd result, we cannot say it is an absurd one.[30] We cannot say the change is a result of drafter's error, and there is no way for us to intervene without usurping the legislature's sole prerogative to make law. The General Assembly substantively altered the meaning of the text by amendment in 1996, and it alone possesses the ability to restructure our civil-rights claim procedures back to the *Vaezkoroni* status quo.[31] Until then, we have no choice other than to reverse both lower court decisions granting UK summary judgment.

### III. CONCLUSION.

For the foregoing reasons, we reverse the Court of Appeals' holding and the trial court's summary judgment and remand the case for further proceedings consistent with this opinion.

All sitting. All concur.

---

**30.** The doctrine of absurd results may allow a reviewing court to disregard or correct a particular provision in the event the disposition cannot possibly be reasonable and the error is technical or the result of oversight. Although the legislature may have lacked appreciation for the changes it made to KRS 344.270, we cannot say the error is technical or so absurd to merit our interference.

**31.** We wish to be clear that today's analysis was premised solely on the arguments relating to the *statute's* preclusive effect on Owen's claims. Because we received no alternative arguments, we cannot say whether common law doctrines, such as issue preclusion or claim preclusion, apply to bar trial court consideration de novo of a final administrative ruling.