JONES, JUDGE:
The Appellant, Teen Challenge of Kentucky Inc., ("Teen Challenge"), appeals from the October 11, 2016 order of the Jefferson Circuit Court. Therein, the circuit court dismissed Teen Challenge's petition for writ of mandamus. Having reviewed the record and applicable law, for the reasons more fully explained below, we REVERSE and REMAND.
I. THE PARTIES
A. Teen Challenge
Teen Challenge is a Kentucky nonprofit corporation. It operates two religiously-based, residential addiction recovery treatment centers in Kentucky, one for women and one for men. The women's center, Priscilla's Place, is located in Louisville, Kentucky. The men's center, Chad's Hope, is located in Manchester, Kentucky. As a condition for admittance, Teen Challenge requires applicants to agree to participate in Christian assemblies. Additionally, it was alleged that all applicants must be physically fit enough to climb stairs and perform chores; cannot be taking prescription medications for mental health; and that female applicants could not be pregnant.[1]
*475 B. The Lexington Fair Housing Council
The Lexington Fair Housing Council ("Council") is a nonprofit civil rights agency that investigates complaints of housing discrimination throughout Kentucky. Individuals who believe they have been the victims of housing discrimination in Kentucky may contact the Council. The Council investigates the complaints. If the Council determines that the complaints are valid, it assists the individuals in filing complaints in court, with the Commission, and/or with the U.S. Department of Housing and Urban Development ("HUD").
C. The Kentucky Commission on Human Rights
The Kentucky Commission on Human Rights ("Commission") is a state agency. It was created by the General Assembly in 1960. See KRS 344.150. The Commission consists of eleven members. Id. The members are appointed for three year terms by the Governor. Id. The Governor also selects one of the eleven members to serve as the chairperson. Id. During the relevant time period, George Stinson, was serving as the chairperson of the Commission. The Commission's purpose is "to encourage fair treatment for, to foster mutual understanding and respect among and to discourage discrimination against any racial or ethnic group or its members." KRS 344.170. Among other powers, the Commission is vested with the authority to "to receive and investigate complaints relating to discrimination, to offer recommendations to eliminate any injustices it discovers, and to hold public hearings and request the attendance of witnesses." Owen v. Univ. of Ky. , 486 S.W.3d 266, 269 (Ky. 2016) (citing KRS 344.180 and KRS 344.190 ) ).
KRS 344.600 governs complaints filed before the Commission alleging discriminatory housing practices. Such complaints must be filed with the Commission "not later than one (1) year after an alleged discriminatory housing practice has occurred or terminated[.]" KRS 344.600(1)(a) 1. After a housing discrimination complaint has been filed, the Commission "shall within five (5) days serve written notice upon the aggrieved person acknowledging the filing and advising the aggrieved person of the time limits and choice of forums provided in KRS 344.635."[2] KRS 344.600(1)(b) 1. Within ten days of the complaint, the Commission must "serve on the respondent a written notice identifying the alleged discriminatory housing practice and advising the respondent of the procedural rights and obligations of respondents under this chapter, together with a copy of the original complaint[.]" KRS 344.600(1)(b) 2. The respondent has ten days after receiving the Commission's notification to file an answer. KRS 344.600(1)(b) 3.
The Commission "shall commence an investigation of the alleged discriminatory housing practice within thirty (30) days of filing the complaint and complete the investigation within one hundred (100) days after the filing of the complaint, unless it is impracticable to do so." KRS 344.600(1)(b) 4. "If the [C]ommission is unable *476 to complete the investigation within one hundred (100) days after the filing of the complaint, the [C]ommission shall notify the complainant and respondent in writing of the reasons for not doing so." KRS 344.600(1)(c). Following its investigation, "[t]he [C]ommission shall determine, based on the facts, whether probable cause exists to believe that a discriminatory housing practice made unlawful under this chapter has occurred or is about to occur." KRS 344.625(1). The Commission "shall" make its probable cause determination "not later than the one hundredth day after the date a complaint is filed unless: (a) It is impracticable to make the determination; or (b) The [C]ommission has approved a conciliation agreement relating to the discriminatory housing complaint." KRS 344.625(2). "If it is impracticable to make the determination within the time period provided by subsection (2) of this section, the [C]ommission shall notify the complainant and respondent in writing of the reasons for the delay." KRS 344.625(3).
"If the [C]ommission determines that probable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the commission shall, except as provided in subsection (6) of this section, immediately issue a charge on behalf of the aggrieved person for further proceeding under KRS 344.635." KRS 344.625(4). "If the [C]ommission determines that no probable cause exists to believe that a discriminatory housing practice has occurred or is about to occur, the [C]ommission shall promptly dismiss the complaint. The [C]ommission shall make public disclosure of each dismissal at the request of the respondent." KRS 344.625(7).[3]
After the Commission issues a discriminatory housing charge, the Commission shall cause a copy thereof, together with information as to how to make an election of an administrative or judicial choice of forum under KRS 344.635, and the effect of such election, to be served on each respondent named in the charge, together with a written notice of opportunity for a hearing at a time and place specified in the notice, unless that election is made, and on each aggrieved person on whose behalf the discriminatory housing complaint was filed. See KRS 344.630. When a discriminatory housing charge is filed, a complainant, a respondent, or the aggrieved person on whose behalf the complaint is filed, may elect to have the claims asserted in that charge decided in a civil action under KRS 344.670, in lieu of an administrative hearing before the Commission under KRS 344.640. See KRS 344.635. This election must be made not later than twenty days after the receipt by the electing person of service under KRS 344.630, from the commission or, in the case of the Commission, not later than twenty days after service to the respondent and complainant. Id.
Assuming that no election is made to have the matter decided in a civil action, the Commission must provide an opportunity for an administrative hearing in accordance with KRS Chapter 13B with respect to the charge issued under KRS 344.625. See KRS 340.640. Following the administrative hearing, the Commission must determine whether the respondent engaged in discriminatory conduct. See KRS 344.645. Thereafter, "the [C]ommission shall issue a final order in accordance with the provisions of KRS Chapter 13B." Id. "If the [C]ommission finds that a respondent has engaged or is about to engage in a discriminatory housing practice, the [C]ommission shall promptly issue a final order for appropriate relief, which may *477 include actual damages suffered by the aggrieved person and injunctive or other equitable relief." KRS 344.645. "If the [C]ommission finds that the respondent has not engaged or is not about to engage in a discriminatory housing practice, the [C]ommission shall enter a final order dismissing the charge." KRS 344.645(3).
D. HUD
While HUD is not a party to this appeal, it is necessary to understand how HUD and the Commission overlap when a complaint is filed with both agencies. HUD is an agency of the federal government. It was established by the Department of Housing and Urban Development Act of 1965. One of HUD's charges is to enforce the Fair Housing Act, 42 U.S.C. § 3601, et seq ., which applies to almost all housing in the country. The Fair Housing Act prohibits discrimination in housing based on race, color, religion, sex, national origin, disability, or familial status.
Like the Commission, HUD receives complaints from individuals regarding claims of housing discrimination. Pursuant to 42 U.S.C.[4] § 3610(f), HUD refers complaints to state agencies, like the Commission,
(1) Whenever a complaint alleges a discriminatory housing practice-
(A) within the jurisdiction of a State or local public agency; and
(B) as to which such agency has been certified by the Secretary under this subsection[.]
Id. If both of the above criteria are present, "the Secretary shall refer such complaint to that certified agency before taking any action with respect to such complaint." Id.
Once HUD has referred a complaint to a state agency,
(2) Except with the consent of such certified agency, the Secretary, after that referral is made, shall take no further action with respect to such complaint unless--
(A) the certified agency has failed to commence proceedings with respect to the complaint before the end of the 30th day after the date of such referral;
(B) the certified agency, having so commenced such proceedings, fails to carry forward such proceedings with reasonable promptness; or
(C) the Secretary determines that the certified agency no longer qualifies for certification under this subsection with respect to the relevant jurisdiction.
42 U.S.C. § 3610(f)(2).
II. FACTUAL & PROCEDURAL BACKGROUND
On January 8, 2015, the Council filed a complaint with the Commission alleging that Teen Challenge's admission requirements violate KRS 344.360, KRS 344.280, and 42 U.S.C. § 3601, et seq . in discriminating against individuals based on their disability, familial status, and religion. The Council filed a similar complaint with HUD on January 13, 2015.
The Commission notified the Council that it had received its complaint against Teen Challenge and had assigned the complaint to LiAndrea Goatley for investigation. The Commission noted that "upon completion of the investigation a determination of probable cause or no probable cause will be issued if conciliation has been unsuccessful. If a probable cause determination is issued, you will have the right to elect whether to have your complaint decided in an administrative hearing before the Commission or in Circuit Court." The Commission also notified Teen Challenge *478 that a complaint had been filed against it and requested Teen Challenge to file an answer.
HUD notified the Council and Teen Challenge that it had referred the Council's complaint to the Commission for investigation as required by 42 U.S.C. § 3610(f). HUD explained that the Commission would take all further action on the complaint unless the Commission failed to begin processing the complaint within 30 days. HUD noted that after the Commission completed its investigation, the Commission would "issue a determination on whether there was a violation of law." HUD noted that it would not communicate with the parties again unless the Commission failed to begin processing the complaint within 30 days. In that event, HUD could elect to take it up again.
With the assistance of counsel, on or about January 23, 2015, Teen Challenge answered the complaint. Teen Challenge admitted that the complaint accurately stated its admission policies (attending religious classes, not being pregnant, not taking prescription medications for mental health, and being fit enough to climb stairs and perform chores); however, it maintained that it was not a housing provider and was covered by the religious exemption. Thereafter, apparently in response to the Commission's request, Teen Challenge produced three of its officers/employees for in-person interviews with the Commission: Rev. Julie Duvall, Executive Director; Sarah LeBlanc, Women's Director; and Rev. Wendell Carmack, Men's Director. The Commission conducted these interviews on or about February 26, 2015. Based on the record, this appears to be the only investigatory-related activity the Commission took in response to the Council's complaint against Teen Challenge.
Pursuant to KRS 344.600(1)(b) 4, the Commission had until April 18, 2015, to complete its investigation. It did not do so. Instead, on May 18, 2015, the Commission sent Teen Challenge a letter notifying it that the investigation was not yet complete. By this time, the complaint had been pending for one-hundred and thirty-one (131) days. The letter states:
Pursuant to KRS 344.360 the [Commission] is required to make a determination regarding probable cause within 100 days of the file date or advise you of the reason we are unable to do so.
This letter is to advise you that the investigation of the above mentioned complaint has not been completed. The Kentucky Civil Rights Act directs this agency to conduct a detailed investigation of the complaint and engage in conciliation efforts with respect to the complaint. In light of the substantive requirements of the Act, additional time is needed for investigation and conciliation in this matter. Efforts will be made to complete the investigation in the next sixty days.
According to the letter, the Commission expected to complete its investigation by July 15, 2015. It is unclear what, if any, additional investigatory efforts the Commission made after it sent the May 18, 2015 letter. However, the administrative record indicates that "on June 1, 2015, legal staff accepted the complaint with a recommendation of probable cause." Nevertheless, the Commission did not take any formal action at this time. Several additional months passed without the Commission acting on the complaint. Eventually, on November 10, 2015, "HUD informed the Commission's legal staff that it would be reactivating the complaint." As a result, the Commission's legal staff recommended that the Commission administratively close the Commission action through "dismissal without prejudice." Even so, the Commission did not take up the complaint for *479 several more months. On May 13, 2016, the Commission's Executive Director, John Johnson, wrote a letter to HUD indicating that the Commission was referring the case to HUD at its request.
Four days later, on March 17, 2016, four-hundred and thirty-five (435) days after the complaint was filed, the Commission finally entered an order addressing the complaint. This order stated that the Commission found no probable cause against Teen Challenge and dismissed the complaint. Commission Chairperson, George W. Stinson, signed the order. The Commission's order contained the following notice:
Right to appeal: This is a final and appealable administrative order, for which there is no just cause for delay. Pursuant to KRS 13B.140, you have a right to appeal this administrative determination/order by filing a petition in the appropriate state Circuit court within thirty (30) days after the final order of the agency is mailed or delivered by personal service.
In addition to the order, the Commission also sent a letter to Teen Challenge, signed by John J. Johnson, the Commissions' Executive Director, stating that the complaint filed by the Council had been dismissed as "the investigative record does not support a probable cause determination that [Teen Challenge] engaged in an unlawful practice under the Kentucky Civil Rights Act. Therefore, enclosed is a copy of the Dismissal Order."
Approximately a week after the Commission entered its dismissal order, the Commission's counsel, Keith Duerr, contacted Teen Challenge's counsel by telephone. Mr. Duerr indicated he would be filing a motion with the Commission to "set aside" the March 17, 2016, order. Mr. Duerr explained that the order finding no probable cause was entered in error. According to Mr. Duerr, the order entered did not reflect the Commission's intention. He maintained that the Commission meant to enter an order dismissing the charge against Teen Challenge "without prejudice." Mr. Duerr pointed out that the minutes from the meeting indicated that the Commission voted to adopt all the recommendations made before it, and the legal staff's recommendation report was clear that the staff recommended that the Commission dismiss the complaint against Teen Challenge without prejudice.
Teen Challenge objected to the motion to set aside. Teen Challenge asserted that the Commission no longer had the authority or the jurisdiction to "set aside" its final order as jurisdiction over the complaint had transferred to the Circuit Court pursuant to KRS 13B.140. Alternatively, it argued that even if the Commission had authority to correct a mistake, it lacked the authority to enter a "dismissal without prejudice." Despite these objections, on April 21, 2016, the Commission ordered the March 17, 2016, order be set aside and dismissed the complaint against Teen Challenge without prejudice.
Subsequently, on April 27, 2016, Teen Challenge filed a Petition and Amended Petition for Writ of Mandamus with the Jefferson Circuit Court. Teen Challenge sought a writ to prohibit the Commission "from entering, serving, countenancing, acting upon, or otherwise affording any validity to that certain Order signed and entered by the Commission on April 21, 2016." Alternatively, Teen Challenge asked the trial court to direct the Commission to "perform the duties imposed on it, specifically, determine whether probable cause exists to believe that a discriminatory housing practice had occurred and enter a final order pursuant to KRS 344.625(1)."
Ultimately, the trial court determined that the Commission did not violate any *480 "mandatory duty under KRS 344.625" even though it did not make a probable cause determination. The trial court reasoned that the Commission was authorized to "administratively transfer" the case to HUD for further investigation. It also concluded that the Commission was entitled to correct its prior order to accurately reflect its decision to dismiss the complaint without prejudice. This appeal followed.
III. STANDARD OF REVIEW
"Mandamus is a legal remedy but its issuance is largely controlled by equitable principles with consideration given to rights of the public and of third persons." County of Harlan v. Appalachian Reg'l Healthcare, Inc ., 85 S.W.3d 607, 613 (Ky. 2002). "Mandamus is an appropriate remedy to compel an inferior court or administrative body to adjudicate on a subject within its jurisdiction where it neglects or refuses to do so, but not an appropriate remedy to tell the court or administrative body how to decide or to interfere with its exercise of discretion." Humana of Kentucky, Inc. v. NKC Hosps., Inc. , 751 S.W.2d 369, 374 (Ky. 1988). "An act is ministerial when the law clearly spells out the duty to be performed by the official with sufficient certainty that nothing is left to the exercise of discretion. ... Accordingly, if the statute directs the officer to perform a particular duty which does not involve discretion, the officer is required to do so." Studor, Inc. v. Commonwealth, Office of Housing, Bldgs. and Const. , 390 S.W.3d 145, 148 (Ky. App. 2012) (quoting County of Harlan , 85 S.W.3d at 612-13 ).
A writ of mandamus directing a public officer to perform a mandatory duty is "quintessentially injunctive in nature and only operates prospectively." Hamblen ex rel. Byars v. Ky. Cab. for Health and Family Serv. , 322 S.W.3d 511, 518 (Ky. App. 2010). "And, it constitutes an extraordinary remedy that will only lie in the absence of another adequate legal remedy." Id. "Without the writ of mandamus, no viable legal remedy would exist to command performance of such ministerial duties by public officers." Id.
A lower court's grant, or denial, of a writ of mandamus is reviewed for an abuse of discretion, while questions of law are reviewed de novo. Fletcher v. Graham , 192 S.W.3d 350, 356 (Ky. 2006) (citing Newell Enter., Inc. v. Bowling , 158 S.W.3d 750, 754 (Ky. 2005) ).
IV. ANALYSIS
Teen Challenge maintains that a writ of mandamus is an appropriate remedy in this instance. It argues that the trial court erred by applying a federal regulation to a Kentucky statute. According to Teen Challenge, once the Commission issued its "final order" it no longer retained any authority to "set aside" the March 17, 2016, final order. It also asserts that pursuant to KRS 344.625, the Commission lacked the authority to enter a dismissal without prejudice after it completed its investigation.
KRS 344.625 directs the Commission to make certain determinations. Specifically, KRS 344.625, "Probable cause determination; issuance of charge" provides as follows:
(1) The commission shall determine, based on the facts, whether probable cause exists to believe that a discriminatory housing practice made unlawful under this chapter has occurred or is about to occur.
(2) The commission shall make the determination under subsection (1) of this section not later than the one hundredth day after the date a complaint is filed unless:
*481 (a) It is impracticable to make the determination; or
(b) The commission has approved a conciliation agreement relating to the discriminatory housing complaint.
Id.
There are certain instances when the Commission might not be able to complete an investigation in a timely manner. For instance, the complainant might refuse to cooperate, or the respondent might be difficult to locate. Such instances would make it impracticable for the Commission to complete a timely investigation. In such situations, as the statute indicates, the Commission is not required to complete its investigation within the given time period so long as it provides an explanation for its inability. In this case, however, this is clearly not what occurred. The record indicates that the Commission received the complaint and investigated it. It interviewed at least three witnesses in person, collected the application documents associated with the two establishments at issue, and its staff reviewed Teen Challenge's website.
It was not "impracticable" for the Commission to make a determination whether probable cause existed or not. To the contrary, it appears that the Commission had all the information necessary to do so. Instead of performing its statutory directives, the Commission opted to administratively close the case to allow HUD to re-activate its case. The circuit court even went so far as to suggest that the Commission has the authority to "administratively transfer" a complaint it receives to HUD in lieu of making the probable cause determination required by KRS 344.625.
We do not disagree that the Commission is authorized to and should cooperate with HUD when appropriate. It must be recognized, however, that the federal statutes cited by the circuit court allow HUD to refer complaints to state agencies, like the Commission. There is no analogous Kentucky authority that allows the Commission to refer the complaints it receives to HUD or to administratively close cases that have been simultaneously filed with it and a federal agency.
Nothing suggests that the Commission was prevented from cooperating with and assisting HUD. Additionally, the Commission did not indicate that it needed more time before making a probable cause determination so that HUD could investigate the complaint. Instead, the Commission decided to administratively dismiss the complaint without having made a probable cause determination. This course of action is clearly at odds with KRS 344.600(1)(b) 4, which contemplates that the Commission will make a decision on probable cause within one hundred (100) days of the complaint being filed or provide an explanation for its failure to do so. While the HUD complaint may not have been before the Commission any longer, the complaint the Council filed directly with the Commission alleging a violation of Kentucky law was still before the Commission. HUD's decision to reactivate its own investigation into the allegations of federal discrimination did not make it any less practicable for the Commission to investigate and make a determination on the alleged state violations that the Council filed directly with the Commission. With respect to that complaint, the Commission required Teen Challenge to file an answer. It requested and received interviews with Teen Challenge's personnel. In short, it undertook and appears to have completed an investigation.
KRS 344.625 states in unequivocal terms that the Commission must issue a determination on probable cause within one hundred (100) days of the complaint having been filed unless the Commission explains *482 why it is impracticable to do so within that time period. The Commission provided no explanation of impracticability. Instead, well over a year after the complaint was filed, the Commission ultimately entered an order dismissing the complaint without prejudice. That order did not address probable cause as required by KRS 344.625.
While the Commission is authorized to cooperate and work with HUD, it cannot evade its statutory responsibilities. As previously recognized by this Court, "KRS Chapter 344 is specific, 'commission' means 'the Kentucky commission on human rights.' " Canamore v. Tube Turns Div. of Chemetron Corp ., 676 S.W.2d 800, 804 (Ky. App. 1984) (emphasis added). "[A]n Action by a federal agency taken pursuant to federal statute [is] ... outside the bounds of KRS Chapter 344." It is not a substitute for action by the Commission. Id.
While HUD is authorized by federal statute to refer complaints it receives to the Commission, the parties have not cited, and we have not located, any Kentucky statute that allows the Commission to transfer complaints it receives to HUD. Certainly, the Commission should cooperate with HUD. And, given the similarities between Kentucky law and federal law in the area of housing discrimination, the Commission can make conclusions regarding the violations of federal law. However, the fact that the Commission is authorized to cooperate with HUD does not mean that the Commission has the authority to forego its mandatory duty to make a probable cause determination after the completion of an investigation.
We are sympathetic to the burdens placed on the Commission. The Commission is charged with investigating an enormous amount of complaints and making a determination in a relatively short amount of time. The statute, however, provides the Commission with a remedy. It can delay rendering a decision on probable cause beyond the one-hundred (100) day mark so long as it provides the parties with its reasons for needing additional time to complete an investigation. That is not what ultimately occurred in this case. The Commission had over four hundred (400) days to complete its investigation. It appears from the administrative record before us that it did so. It offered no explanation for needing additional time to process the complaint. Once the investigation was complete, the Commission had a mandatory duty to make a probable cause determination. It was not authorized to simply dismiss the complaint without prejudice in favor of allowing a federal agency to do its work. To this end, the circuit court erred when it determined that the Commission was permitted to "administratively transfer" the investigation and probable cause determination to HUD by dismissing the case without prejudice.
We must now consider the effect, if any, of the Commission's first order. Initially, the Commission entered an order dismissing the complaint on a finding of no probable cause. The order indicated that it was a final and appealable order subject to the appeal provisions of KRS 13B.140. Subsequently, the Commission vacated its dismissal of no probable cause. The Commission maintained it was authorized to do so because the first order was the product of a clerical error in that the order entered did not reflect the Commission's ultimate decision.
Kentucky Rule of Civil Procedure ("CR") 60.02, only applies to courts, not administrative agencies. Kentucky Board of Med. Licensure v. Ryan , 151 S.W.3d 778 (Ky. 2004). In Ryan , the Kentucky Supreme Court determined that a circuit *483 court did not have the authority to order the Kentucky Board of Medical Licensure to conduct a CR 60.02 hearing after rendering a final order. Teen Challenge relies on Ryan to support its argument that the Commission does not have the authority to change its dismissal order.
The original order in Ryan was entered in 1994. Id . It was subject to KRS Chapter 13B. Id. Both the circuit court and our Court affirmed the dismissal. Id. In 2001, Ryan requested the circuit court to issue a writ of mandamus directing the Board to take up her CR 60.02 motion. Id . The motion was predicated on subsequent events that called the validity of the revocation into question. The circuit court issued the writ. Id. at 779-80. Ultimately, the Kentucky Supreme Court held that the Board did not have the authority to conduct a CR 60.02 -type hearing after having issued a final decision that was subject to and had been appealed pursuant to KRS Chapter 13B. Id. at 780.
By the same token, Teen Challenge argues that KRS Chapter 13B prevents the Commission from taking any action on its dismissal order. Teen Challenge's reliance on KRS Chapter 13B is understandable. The Commission's dismissal order and accompanying letter indicated that the dismissal was in accordance with KRS 344.645(4) and appealable under KRS Chapter 13B. KRS 344.625(4) refers to final orders of the Commission on discrimination charges . Such orders are required to be "in accordance with the provisions of KRS Chapter 13B." KRS 344.645(4). Even though the Commission's letter to the parties recited this section, it is not applicable. A charge is issued by the Commission after it determines that a complaint is supported by probable cause. In this case, no charge was ever issued. This calls into question whether an order finding no probable cause on a complaint is actually a final order subject to KRS Chapter 13B.
KRS Chapter 13B does not apply to all actions undertaken by an administrative body. Specifically, KRS 13B.020 provides that KRS Chapter 13B does not apply to "[i]nvestigations, hearings to determine probable cause , or any other type of information gathering or fact finding activities." KRS 13B.020(2)(a) (emphasis added). Likewise, KRS 344.640 is clear that the provisions of KRS Chapter 13B apply only after a charge is issued under KRS 344.625. See KRS 344.640 ("[T]he commission shall provide an opportunity for an administrative hearing in accordance with the provisions of this chapter and KRS Chapter 13B with respect to the charge issued under KRS 344.625.") (emphasis added). As such, we hold that KRS Chapter 13B does not apply to the Commission's determination regarding whether probable cause exists to issue a charge. This was a determination on a complaint, not a charge. Accordingly, the portion of Ryan dealing with KRS Chapter 13B is inapplicable.
Aside from the KRS Chapter 13B issue, Ryan is factually and procedurally distinguishable from the present case. In Ryan , the circuit court directed the Board to re-open the administrative case, conduct a hearing, and consider new evidence after several years had passed. In essence, the circuit court was ordering the Board to re-deliberate. Here, the Commission is not claiming that it has the authority to reevaluate whether probable cause exists. It claims, and the administrative record supports, that the order entered by the Commission was the product of a clerical error in that it does not reflect the Commission's actual determination on the matter.
"It is well settled that administrative agencies, as well as courts, have sufficient authority to correct obvious clerical *484 errors in their orders, so long as the mistake is plainly shown in the record." Mike Little Gas Co., Inc. v. Pub. Serv. Comm'n. , 574 S.W.2d 926, 927 (Ky. App. 1978). "An administrative agency has the authority to correct an obvious mistake when correction can be done promptly and fairly even when the agency has made a final decision." 73A C.J.S. Public Administrative Law and Procedure § 361.
We have reviewed the administrative record before us. It is clear from the record that Commission voted to accept the legal staff's recommendation. Likewise, it is clear that the Commission's legal staff recommended that the complaint against Teen Challenge be dismissed without prejudice. Legal staff never recommended the Commission dismiss the complaint based on no probable cause. The order entered by the Commission did not reflect its actual decision. The mistake is plainly shown in the record, and the Commission had the inherent authority to correct it in a timely manner.
However, the problem in this case is not that the Commission simply sought to correct an error. The problem is that the "corrected" order dismissed the complaint without a determination on probable cause. The Commission has a mandatory duty to make an actual determination on probable cause once an investigation has been completed. It cannot refuse to do so on the basis that the claim has been "administratively transferred" to a federal agency. Congress provided HUD with the authority to transfer its complaints to the Commission. Our General Assembly has not vested the Commission with the authority to allow HUD to make probable cause determination for the Commission or to refuse to act because a federal agency is investigating a similar charge.
In this instance, the Commission had a mandatory duty to make a determination on probable cause. Accordingly, we reverse and remand to the circuit court. On remand, the circuit court should issue the writ. Having completed its investigation, the Commission should be directed to comply with its mandatory duty to make a determination on probable cause as required by KRS 344.635.
V. CONCLUSION
For the reasons set forth above, we reverse the October 11, 2016, order of the Jefferson Circuit Court, and remand this matter for further proceedings consistent with this opinion.
ALL CONCUR.

Teen Challenge denies that these were admission requirements. Rather, it claims this type of information was voluntarily collected during the intake process. There has not yet been any factual determinations made regarding the allegations made against Teen Challenge. We include this information for background purposes only.

KRS 345.635 provides: "When a discriminatory housing charge is filed under KRS 344.625, a complainant, a respondent, or the aggrieved person on whose behalf the complaint is filed, may elect to have the claims asserted in that charge decided in a civil action under KRS 344.670, in lieu of an administrative hearing before the commission under KRS 344.640."

"A finding of no probable cause by KCHR does not preclude an independent civil action under KRS 644.650." Ky. OAG 14-003 (Aug. 14, 2014).

United States Code.