RENDERED: DECEMBER 8, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2017-CA-1641-MR

EVERETT SCOTT HOFFMAN　　　　　　　　　　APPELLANT

　　　　　　　　　APPEAL FROM JEFFERSON CIRCUIT COURT
v.　　　　　HONORABLE PAULA SHERLOCK, JUDGE
　　　　　　　　　ACTION NO. 05-CI-504744

GLORIA HOFFMAN (NOW
THOMAS)　　　　　　　　　　　　　　　　APPELLEE

AND

NO. 2017-CA-1690-MR

GLORIA HOFFMAN (NOW
THOMAS)　　　　　　　　　　　　　CROSS-APPELLANT

　　　　CROSS-APPEAL FROM JEFFERSON CIRCUIT COURT
v.　　　　　HONORABLE PAULA SHERLOCK, JUDGE
　　　　　　　　　ACTION NO. 05-CI-504744

EVERETT SCOTT HOFFMAN　　　　　　　　CROSS-APPELLEE

AND

NO. 2021-CA-1367-MR

EVERETT SCOTT HOFFMAN                                      APPELLANT


v.
APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE TARA HAGERTY, JUDGE
ACTION NO. 05-CI-504744


GLORIA HOFFMAN (NOW
THOMAS)                                           APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: JONES, LAMBERT, AND McNEILL, JUDGES.

JONES, JUDGE: Three related appeals are before this Court: Appeal No. 2017-CA-1641-MR; Cross-Appeal No. 2017-CA-1690-MR; and Appeal No. 2021-CA-1367-MR. In Appeal No. 2017-CA-1641-MR and Appeal No. 2021-CA-1367-MR, the Appellant/Cross-Appellee, Everett Scott Hoffman ("Scott"), seeks review of the family court's denial of his 2007, 2008, and 2013 motions to modify maintenance. For the reasons set forth below, we affirm the family court's denial of Scott's motions to modify maintenance.

-2-

In Appeal No. 2017-CA-1690-MR, which like the other 2017 appeal was filed prior to the family court ruling on the parties' pending CR[1] 59.05 motions, the Appellee/Cross-Appellant, Gloria Hoffman, asserted that the family court's September 12, 2017 order should be remanded with instructions for the family court to calculate her maintenance arrearage. The family court subsequently entered an arrearage order, mooting the issue raised by Gloria in her cross-appeal.

## I. BACKGROUND

On December 29, 2005, Scott filed a petition to dissolve his marriage to Gloria. At that time, the parties had been married for close to eighteen years. On May 18, 2006, the family court dissolved the parties' marriage by entering a limited decree of dissolution. All remaining issues concerning property division, child custody and support, as well as maintenance were reserved for further ruling. On June 19, 2006, Gloria and Scott executed a "partial property settlement agreement." This agreement settled many of the issues related to division of the parties' property. However, the parties left several issues related to the division of their property for the family court to decide, including a division of Scott's military retirement pay and survivorship benefits and Gloria's request for maintenance. In

---

[1] Kentucky Rules of Civil Procedure.

an order dated July 11, 2006, the parties agreed that Gloria was entitled to receive thirty-six and one-half percent (36.5%) of Scott's military retirement.

Prior to the final evidentiary hearing on the outstanding issues, the parties signed an agreed order for Gloria to receive temporary support "pending further orders of the court." Therein, the parties agreed Scott would pay Gloria temporary maintenance of $2,000.00 per month, but once Gloria began receiving payments from her share of Scott's military retirement, her maintenance would be reduced by a corresponding amount. An agreed order to this effect was entered on July 11, 2006. Through the rest of this Opinion, we refer to this order as the "2006 Agreed Order."

On March 24, 2007, the family court made findings of fact and conclusions of law concerning various outstanding issues related to child custody, child support, maintenance, debts, and attorneys' fees. With respect to maintenance, the family court imputed Gloria with a yearly income of $20,000.00 for the first two years and $40,000.00 yearly income thereafter. The court did not impute any income from Gloria's rental property because it found that there was not any clear gain from the property. The family court found that Scott's gross monthly income was $13,941.34, and the court did not include any income from Scott's rental property for the same reasons it did not include Gloria's. After having determined the parties' incomes, the family court concluded that Gloria

lacked sufficient property, including marital property, to provide for her reasonable needs, and that she was, at that time, unable to support herself through appropriate employment. The family court determined that Scott could provide for himself while simultaneously providing some maintenance to Gloria and instructed him to pay Gloria $2,700.00 monthly for two years and thereafter $2,000.00 monthly for ten years for a total of $304,800 over twelve years.

Scott filed a CR 59.05 motion to amend the family court's maintenance award to Gloria, arguing that the award should be offset by the amount that Gloria receives from his military pension. Gloria countered that the family court should not alter the maintenance award based on any military retirement she received because the retirement was part of Gloria's marital property that had already been equitably awarded to her by the family court.

Around the same time, on June 14, 2007, Scott moved the family court to reduce his monthly maintenance to Gloria to $1,564.14 per month. Throughout the rest of this Opinion, we refer to this motion as "the 2007 Motion." He explained that when he was ordered to pay Gloria maintenance of $2,700.00 per month, she was not receiving anything from his military retirement. However, since entry of the order, Gloria had begun receiving $1,135.14 per month from the military pension.

The family court denied Scott's motion to alter, amend, or vacate by order entered June 25, 2007; no separate ruling was issued on the 2007 Motion, leaving that motion pending before the family court.

On July 20, 2007, Scott appealed the family court's March 29, 2007 judgment arguing, in part, that the family court should have applied the 2006 Agreed Order and reduced Gloria's maintenance in relation to her share of his military benefits. We rejected Scott's arguments and affirmed the family court's maintenance award as to both amount and duration but reversed the family's order that Scott had to pay $10,736.40 for Gloria's attorneys' fees. *E.H. v. G.H.*, No. 2007-CA-001458-MR, 2008 WL 4889571 (Ky. App. Nov. 14, 2008) ("*Hoffman I*").[2]

---

[2] Since *Hoffman I*, there appears to have been some dispute whether Scott's arguments concerning the 2006 Agreed Order were actually considered by us as part of *Hoffman I*. In *Hoffman I*, we summarized Scott's argument as follows:

> In an order dated July 11, 2006, the parties agreed that because some of [Scott's] retirement was nonmarital property, [Gloria] was to receive 36.5 percent of [Scott's] retirement account. Once this amount was received, it was to be deducted from the maintenance obligation of [Scott]. This amount has not been deducted from the maintenance obligations established in the order at issue in this appeal. [Gloria] claims that this was a temporary agreement, and that the court's current order should stand.

*Id.* at *3. This language from *Hoffman I* makes clear that we were aware of and considered Scott's arguments regarding the effect of the 2006 Agreed Order as part of our prior opinion. Notwithstanding those arguments, we affirmed the family court's maintenance award to Gloria as to both amount and duration. Scott filed a petition for rehearing, which was denied by this Court by order entered January 12, 2009. Neither Scott nor Gloria petitioned the Kentucky

During the pendency of *Hoffman I*, Scott filed a second motion with the family court seeking to reduce his maintenance. Through the rest of this Opinion, we refer to this motion as "the 2008 Motion." Since no ruling had been issued on the 2007 Motion, Scott again requested that his maintenance be reduced *pro rata* by whatever amount Gloria was receiving from the military pension. He also asserted that Gloria's monthly expenses had been reduced because she had paid off mortgages on both her primary residence and a rental property she owned.

It appears that Scott's 2008 Motion may have been misplaced or overlooked by the clerk's office since the main record was on file with our Court at the time. In any event, the case lay dormant for several years without a ruling on either the 2007 Motion or the 2008 Motion. Even so, Scott appears to have taken matters into his own hands and had begun unilaterally reducing Gloria's monthly maintenance payments because, in July 2013, Gloria filed a motion requesting the family court to award her maintenance arrearages, plus interest at the legal rate based upon what Gloria described as Scott's "unilateral offset of her maintenance award." Gloria supported her motion with an affidavit in which she explained that since entry of the family court's March 29, 2007 order, Scott had "routinely

---

Supreme Court for discretionary review, and *Hoffman I* became final on February 12, 2009, thirty-one days after entry of our denial order.

deducted from his maintenance obligation a sum equal to Gloria's share of [Scott's] military pension." At the time she filed her motion, Gloria estimated that Scott owed her $107,456.22 in unpaid maintenance.

Scott responded to Gloria's motion asserting that he was entitled to reduce his maintenance by the amount Gloria was receiving from his military pension, and that his position was supported by the parties' 2006 Agreed Order. Scott further asserted that at the time the family court heard the original proof regarding the parties' income, Gloria was not yet receiving a monthly benefit from Scott's military retirement. According to Scott, Gloria began receiving the military pension payment in June 2007 some three months after the family court's maintenance award, and that Gloria's receipt of those benefits constituted a change in circumstances justifying a reduction of her monthly maintenance award, which is what had prompted the 2007 Motion and the 2008 Motion.

Scott then filed another motion on September 13, 2013. Therein, Scott requested the family court to modify both its child support and maintenance awards.[3] Through the rest of this Opinion, we refer to this as "the 2013 Motion." In the 2013 Motion, Scott argued that his obligations should be reduced because his financial situation had drastically changed since 2007 when the family court

_____

[3] The parties' children subsequently reached majority, and Scott was relieved of his child support obligations. His current appeals relate only to the denial of his request to modify maintenance.

-8-

made its original child support and maintenance awards. Scott explained that in 2007 he had only recently left federal employment, and, at that time, his professional contacts were such that he was able to obtain significant contracts with the federal government. By 2013, however, Scott's contacts had grown stale and his income from contracting work had ended for all intents and purposes. He stated that in 2012 he earned $32,721.00, plus $13,372.00 from his independent contracting business, with losses of $13,084.00, and his financial picture for 2013 was about the same. He also asserted that Gloria was receiving $1,586.65 per month from his military pension, which was income the family court had not attributed to Gloria back in 2007.

On October 11, 2013, the family court held a hearing on the pending motions (Scott's 2007, 2008, and 2013 Motions to reduce Gloria's maintenance and Gloria's motion to hold Scott in contempt). It subsequently entered an order on March 27, 2014. As to maintenance, the family court explained as follows:

> Since the maintenance finding has been in place, [Scott] has unilaterally deducted [Gloria's] maintenance by her share of his Marine Corps retirement payments. [Scott] contends that the parties were already in agreement that [Gloria's] maintenance shall be reduced by her portion of the retirement payments per the parties' Agreed Order entered July 11, 2006 as it constituted a "judicial admission." However the Agreed Order, by its own language, was considered to be temporary support pending further orders of the court. The Court can only interpret the four corners of the document which was drafted and agreed to by the parties. If the parties

intended that the maintenance terms were to be permanent then they would have drafted it as such. Therefore, the March 29, 2007 Findings of Fact is a subsequent order that replaced the temporary support agreement.

Additionally, the Kentucky Court of Appeals found that this Court properly considered the factors enumerated in KRS[4] 403.200 relating to maintenance, which includes the financial resources of the parties seeking maintenance, and found that the maintenance award was not clearly erroneous. Therefore, this Court accurately calculated [Gloria] and [Scott's] respective income in order to determine maintenance.

- June 7, 2007 Motion to Reduce Maintenance

In June of 2007, [Gloria] began receiving her share of [Scott's] retirement, and on June 7, 2007 [Scott] filed a motion requesting implementation of the parties' July 11, 2006 Agreed Order. [Scott's] motion and affidavit was only supported by the single fact that [Gloria] was receiving an additional $1,135.14 per month through her portion of the Marine Corps retirement payment, which reduced [Scott's] retirement by said amount. However, the parties['] combined income at that time greatly exceeded the Child Support Guidelines and [Scott's] income remained substantially greater than [Gloria's], by over $10,000.00, even with [Scott's] retirement reduction. The substantial disparity in the parties' income is not altered by the minor change of [Gloria's] receipt of her share of [Scott's] retirement.

Further, on November 21, 2007 a motion was filed by [Gloria] for [Scott] to show cause for contempt because he continued to alter the monthly child support and maintenance payments. The motion indicated that the Court had verbally admonished [Scott] and instructed

---

[4] Kentucky Revised Statutes.

-10-

him not to deduct any money due to [Gloria] without Court approval. Therefore Scott's June 7, 2007 motion for maintenance reduction is **denied** as it does not rise to a change in circumstance so substantial and continuing as to make the terms of the maintenance unconscionable.

- July 14, 2008 Motion to Reduce Maintenance

On July 14, 2008, [Scott] filed an additional motion to reduce maintenance citing [Gloria's] receipt of [Scott's] retirement and [Gloria's] recent change in the mortgage on the Owl Creek property and the Plymouth rental property. According to [Scott's] affidavit [Gloria] was receiving $1,135.14 through his retirement and indicated that [Gloria] paid off both mortgages in full. By paying the mortgages in full, [Gloria] would net $850.00 to $1,000.00 per month (less taxes and insurance) from the rental property and she no longer had [an] $1,800.00 monthly mortgage on the Owl Creek property. Basically, [Gloria] was receiving an additional $2,000.00 per month and was able to save $1,800.00 in monthly expenses. This Court finds that there was a substantial and continuing change in circumstance and [Gloria's] maintenance is reduced by her share of Father's retirement effective July 14, 2008.

Therefore, since [Gloria's] maintenance is reduced by [Scott's] retirement effective July 14, 2008, [Gloria] is entitled to reimbursement for the maintenance amount [Scott] incorrectly reduced in 2007 as well as from January through June or six (6) months of 2008. . . . Therefore, [Gloria] shall receive reimbursement from [Scott] in the amount of $15,731.64[.]

While the family court's March 27, 2014 order addressed the 2007

and 2008 Motions, it did not address the 2013 Motion, which included additional

arguments about the substantial and continuing change in Scott's income that he

-11-

asserted had occurred following the family court's entry of its original maintenance and child support awards in 2007.

The parties' counsel did not receive the family court's March 27, 2014 order until April 9, 2014 – thirteen days after the order's entry. On April 17, 2014, eight days after the parties' counsel received the March 27, 2014 order, Gloria moved for relief pursuant to CR 59.05 and/or CR 60.02. She asserted that the family court had based its ruling on incorrect information insomuch as she had only refinanced the two mortgages at issue, not paid them off.

On August 17, 2015, the family court denied Gloria's motion on the basis that it lacked the jurisdiction to rule because Gloria had filed it more than ten days after the order's entry. Gloria appealed the denial to this Court arguing the family court incorrectly determined that it lacked jurisdiction to rule. We agreed, holding:

> The family court found that both attorneys involved did not receive the order until thirteen days after its entry. Because both attorneys received the order on the same date at different addresses, the only plausible explanation for the delay is that the clerk did not promptly mail the notices of their entry. The family court expressly stated that it was "not opposed, if the rules so allowed, to reconsider the matter." Pursuant to CR 60.02, the family court had the authority to grant Gloria relief and remedy the prejudice caused by the clerk's failure to promptly mail the order reducing maintenance. With the entry of a new order, all time periods for post-order motions will begin.

*Hoffman v. Hoffman*, 500 S.W.3d 234, 237-38 (Ky. App. 2016) ("*Hoffman II*").[5]

With the clock for CR 59.05 motions restarted, Scott also requested relief from the March 2014 order. By order entered September 12, 2017, the family court granted Gloria's CR 59.05 motion, denied Scott's CR 59.05 motion, and specifically noted that Scott's 2013 Motion had never been ruled on making it inappropriate for CR 59 relief. Specifically, the family court stated:

> Scott's maintenance obligation to Gloria began in April 2007 pursuant to this Court's Order, which required Scott to pay maintenance in the amount of $2,700.00 per month for a period of two years and thereafter $2,000.00 per month for ten years. The Order stated [m]aintenance shall be for a fixed period and shall terminate only at Gloria's death or in the event of substantial and continued changed circumstances. In its March 27, 2014 Order, the Court found that [Gloria's] receipt of her share of [Scott's] retirement did not rise to a change in circumstances so substantial and continuing as to make the terms of the maintenance unconscionable or to warrant a termination pursuant to the Court's March 29, 2007 [Order]. Therefore, the Court denied Scott's 2007 motion to reduce maintenance. The Court did find a substantial and continued change in circumstances occurred, however, when Gloria's mortgage changed. The Court found that by paying [the] two mortgages [off]

---

[5] During the pendency of *Hoffman II*, Gloria moved the family court to enter a stay of its March 27, 2014 order. She explained that, since entry of the order, Scott had begun deducting the full amount of her share of Scott's military pension as well as the additional sum of $300.00 per month based on the family court's finding that Gloria owed Scott reimbursement of certain items, "which was again based on the faulty finding of fact that Gloria had paid off two mortgages when in fact she merely refinanced them." She stated that as result of Scott's deductions, she was only receiving $61.88 per month instead of the $2,000.00 per month the family court had originally awarded her. On July 5, 2016, the family court entered an order denying Gloria's motion to stay.

-13-

in full, [Gloria] would net between $850.00 to $1[,]000.00 per month (less taxes and insurance) from her rental property and that she no longer had a $1,800.00 monthly mortgage. That finding is the basis for Gloria's [motion to alter, amend, or vacate].

The Court gave great consideration to all evidence and testimony in making the March 27, 2014 ruling. Both parties presented testimony regarding their financial circumstances. The Court gave careful consideration to the facts and determined that by paying off her mortgages, Gloria gained financial benefit, which coupled with Gloria receiving her portion of Scott's retirement payments amounted to a change in circumstances warranting a reduction in her maintenance reward [sic].

However, the Court erred in its finding that Gloria did not have mortgage payments by paying off her two mortgages on the Plymouth Rd. and Owl Creek properties. Although the Court's finding that Gloria paid off her mortgages is correct, the Court's Order did not include findings that Gloria paid off her mortgages as part of a refinancing on the two mortgages and that she continued to have mortgage payments after the refinance. The Court relied on Scott's affidavit claiming that Gloria no longer had a mortgage payment on the rental property located on Plymouth Rd. as well as her residence in Owl Creek. The Court gave great deference to the affidavits supplied by the parties regarding the large financial tracing and motions to reduce maintenance as they refer back to 2007. It is now clear that Gloria merely refinanced both homes but continued to have mortgage payments of approximately the same amount she had prior to refinancing. Further, Gloria's tax documents from 2007-2012 reflect mortgage interest deductions on both homes. Consequently, Gloria was not receiving an additional $2[,]000.00 per month through net rental income nor was she able to save $1,800.00 in monthly expenses on her Owl Creek [p]roperty.

-14-

Finally, Scott's Marine Corps Retirement is marital property and Gloria is entitled to her proportionate share. Gloria's receipt of her share of Scott's retirement is not considered to be a reduction in Scott's income but it is an allocation and distribution of marital property.

Although both parties incurred some changes in circumstance, they were not so substantial and continuing as to make the terms of maintenance unconscionable. Therefore, Gloria's [motion to alter, amend, or vacate] regarding the 2008 Motion to reduce maintenance is GRANTED. Scott remains entitled to his restitution in the amount of $24,094.09 [attorneys' fees Scott overpaid] while Gloria is now entitled to her maintenance arrearages, which were $154,796.33 through 2016.

Scott filed a third motion to reduce maintenance in 2013, which he discussed in his pleadings after the Court of Appeals opinion. He argued the changes motivating the 2008 motion combined with subsequent material changes in both parties' financial resources support his 2013 motion. In support of his motion, Scott claimed he lost his job in 2008 resulting in a reduction in his income. Scott had obtained new employment by the date of the October 2013 hearing, however, his salary of $72,800.00 and retirement/disability benefits of $4,200.00 per month were less than the $167,296.00 annual income on which the maintenance was set. The Court's March 27, 2014 Order did not address Scott's 2013 motion. The main basis for the Court's finding a change in circumstances significant enough to grant Scott's 2008 motion to reduce maintenance was Gloria no longer having mortgage payments. Gloria argued that facts and arguments regarding changed circumstances based on the parties' incomes and expenses over the years up to the present day are not properly before the Court. Gloria also argued Scott did not file a motion to alter, amend or vacate the March 27, 2014 Order and his motion includes speculations and unsworn testimony outside of what was

-15-

presented at the original hearing. The Court simply did not reach that issue and it is not considered in this opinion on the motion to alter, amend or vacate.

Both parties filed CR 59.05 motions seeking to alter, amend, or vacate the family court's September 12, 2017 order. In addition, Scott filed a separate motion requesting the family court to rule on the still-pending 2013 Motion.

On October 12, 2017, prior to a ruling on the parties' new CR 59.05 motions to alter, amend, or vacate the family court's September 12, 2017 order, Scott filed a notice of appeal seeking review of the March 27, 2014, and September 12, 2017 orders in Appeal No. 2017-CA-1641-MR. On October 20, 2017, Gloria filed a notice of cross-appeal seeking to establish the amount of Scott's arrearage because of the order denying the 2007 and 2008 Motions in Appeal No. 2017-CA-1690-MR. Unfortunately, the parties did not clearly notify this Court that their CR 59.05 motions to alter, amend, or vacate the September 12, 2017 order were still pending before the family court, and erroneously believing the order to be final, this Court set a briefing schedule for the appeal and related cross-appeal.

By the end of May 2019, the 2017 appeal and cross-appeal had been fully briefed and were submitted to a three-judge panel of this Court for decision. Upon review, this Court discovered that the parties' CR 59.05 motions to alter, amend, or vacate were still pending before the family court, depriving us of

-16-

jurisdiction to take any further action on the substance of their appeals.[6] Recognizing that the parties had already filed briefs and believing that a ruling from the family court was likely imminent, instead of outright dismissing the appeals as premature, we entered an order on September 4, 2019, placing the appeals in abeyance until such time as the family court ruled on the pending CR 59.05 motions.[7]

After numerous orders from this Court, the family court finally entered an order on the pending CR 59.05 motions on July 28, 2021. In that same order, the family court also overruled the still-pending 2013 Motion. In a separate judgment/order entered the same day, the family court awarded Gloria "the total sum of $205,008.72" in maintenance arrearages.

Thereafter, we entered an order returning the appeal and cross-appeal to the Court's active docket. Shortly thereafter, Scott filed a motion asking the Court to place the appeals back in abeyance to allow the family court to rule on his pending CR 52.02 motion for additional findings of fact, which he filed in response

_____

[6] "Upon the filing of a timely CR 59.05 motion, a 'final judgment' is converted into an interlocutory judgment until the motion is adjudicated." *Atkisson v. Atkisson*, 298 S.W.3d 858, 866 (Ky. App. 2009). However, an appellate court is not required to dismiss a prematurely filed appeal; rather, an appellate court may place the appeal in abeyance until a ruling on the CR 59 motion has issued. The premature notice of appeal will be deemed to "relate forward to the time when the CR 59 motion . . . was decided[.]" *Johnson v. Smith*, 885 S.W.2d 944, 950 (Ky. 1994).

[7] At that time, we anticipated that the family court would promptly take up the motions, and the abeyance would likely last no more than thirty to forty-five days. As it turned out, the appeals were not placed back before this panel for a substantive decision until late 2022.

to the family court's July 2021 order. After confirming this fact, we entered an order placing the appeals in abeyance for an additional sixty days.

In December 2021, Scott filed a motion explaining that the family court had denied his CR 52.02 motion for additional findings in an order dated November 19, 2021, and that he had filed a separate notice of appeal related to the denial of the 2013 Motion, Appeal No. 2021-CA-1367-MR. Scott then requested the Court to remove the 2017 appeals from abeyance, join them with his 2021 appeal and enter a briefing schedule. By our order entered January 10, 2022, we removed the 2017 appeals from abeyance and consolidated them with the 2021 appeal to the extent that the three appeals shall be heard by the same three-judge panel.[8] We then referred the consolidated appeals to a prehearing hearing conference attorney for consideration and the establishment of a briefing schedule, including initial briefing in the 2021 appeal and consideration of whether any supplemental briefing was necessary in the 2017 appeals, given the unusual length of time the appeals had been abated.[9] Having now been fully briefed, the three appeals are ripe for decision.

---

[8] At this time, the 2021 appeal was still in its infancy, as it had just been filed, and it had not yet been assigned to a panel as briefing had not been completed. The Clerk of Court was directed to assign the 2021 appeal to this panel upon completion of briefing.

[9] On March 2, 2022, we issued a prehearing conference order stating that if any case law supplementation was necessary as related to the 2017 appeals, the parties could so supplement in the 2021 appeal.

-18-

## II. Scott's First Appeal: No. 2017-CA-1641-MR

### A. The Family Court's Failure to Rule on the 2013 Motion

Scott's lead argument in Appeal No. 2017-CA-1641-MR is that the family court erred when it failed to address his 2013 Motion in its March 27, 2014 order as amended by its order of September 12, 2017. That issue is largely now moot since the family court adjudicated Scott's 2013 Motion in its July 28, 2021 order. However, to avoid future protracted litigation, we will briefly address why the family court did not in fact err when it elected not to address the 2013 Motion in its 2014 and 2017 orders, and how Scott's chosen method of filing this appeal to achieve a ruling on the pending motion was not the proper course of action.

While we generally disfavor piecemeal litigation, family court actions are unique. Unlike other civil actions, family courts retain jurisdiction to modify their orders and awards in certain situations. This is the reason we often see family court cases repeatedly on appeal years after entry of the initial decree.

While we would have much preferred for the family court to have ruled on the 2007, 2008, and 2013 Motions to modify maintenance as part of a single order, it did not, nor was it required to do so. Scott's 2007 and 2008 motions were based on his argument that Gloria's maintenance should be reduced *pro rata* by the amount she received from his military pension. The family court fully resolved those motions. And, contrary to Scott's assertion otherwise, the

-19-

September 12, 2017 order provided it was final and appealable.[10] The family court noted in its September 12, 2017 order that it did not consider Scott's 2013 Motion at the time it ruled on the 2007 and 2008 Motions as it relied on a different basis than the 2007 and 2008 Motions, specifically a reduction in Scott's gross income. Thus, the family court clearly understood that the 2013 Motion was pending before it and planned to take that motion up separately after it resolved the 2007 and 2008 Motions. Perhaps it made sense to the trial court to do so since the 2007 and 2008 Motions were part of the remand in *Hoffman II* whereas the 2013 Motion had been filed while *Hoffman II* was pending before this Court. In any event, since the March 27, 2014 order as amended by the order of September 12, 2017, fully resolved the 2007 and 2008 Motions and the pending CR 59.05 motions as this Court instructed in *Hoffman II*, it was properly designated as final and appealable by the family court.

Of course, we understand Scott's frustration insomuch as his 2013 Motion had been pending before the family court for four years without a ruling when it issued the September 12, 2017 order. An appeal, however, is not the proper method for a litigant to seek an order directing a ruling by a lower court.

---

[10] Although the 2017 order did not include "no just cause for delay" language required by CR 54.02 we do not believe such language was necessary where the family court had continuing jurisdiction to make modifications and its order fully adjudicated the issues raised in the 2007 Motion and the 2008 Motion related to a pro rata reduction of Scott's military retirement, whereas the 2013 Motion to modify was based on a different time period and different circumstances.

When a trial court is derelict in its duty to rule on a pending motion, the proper vehicle through which to obtain an order from this Court requiring a ruling is by filing an original action pursuant to RAP[11] 60 requesting a writ of mandamus. *Teen Challenge of Kentucky, Inc. v. Kentucky Commission on Human Rights*, 577 S.W.3d 472, 480 (Ky. App. 2019) ("Mandamus is an appropriate remedy to compel an inferior court or administrative body to adjudicate on a subject within its jurisdiction where it neglects or refuses to do so[.]"). Had Scott filed an original action instead of an appeal, he could have likely achieved a decision on the 2013 Motion much faster. Suffice it to say, at this juncture, all of Scott's motions have now been ruled upon, rendering any additional discussion of the family court's failure to rule on the 2013 Motion unnecessary.

### B. Reduction of Gloria's Maintenance Due to Receipt of Military Retirement

Scott's next argument is that the family court erred when it refused to modify his maintenance obligation after Gloria began receiving payments from the military retirement. At various points below, Scott has argued that the 2006 Agreed Order compelled a reduction of Gloria's maintenance, and that the family court erred when it did not include such language in its initial award. As discussed above, Scott unsuccessfully made that argument in *Hoffman I*. Despite being aware of Scott's position vis-à-vis the 2006 Agreed Order, this Court affirmed both

---

[11] Kentucky Rules of Appellate Procedure.

the duration and amount of the family court's original maintenance award. Scott did not seek discretionary review from the Kentucky Supreme Court, and *Hoffman I* became final. Thereafter, it was improper for Scott to continue to make any arguments that the maintenance award should be modified pursuant to the 2006 Agreed Order.[12]

As Scott points out, however, at the time the family court made its initial maintenance award to Gloria, it had only been determined that Gloria had a marital property interest in 36.5% of Scott's military retirement, but she was not actually receiving monthly benefit checks. Therefore, Scott asserts that the family court did not take those benefits into consideration when it determined the appropriate amount Scott should pay Gloria in monthly maintenance. After Gloria began receiving the monthly distributions from the military retirement, Scott moved the family court to reduce Gloria's maintenance. Scott asserts that the family court erred when it refused to do so.

Maintenance payments may be modified "upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable."

---

[12] "One of the fundamental underpinnings of our jurisprudence is the law of the case doctrine, which encompasses 'a handful of related rules giving substance to the general principle that a court addressing later phases of a lawsuit should not reopen questions decided by that court or by a higher court during earlier phases of the litigation.'" *Hardin v. Jefferson Cnty. Board of Education*, 673 S.W.3d 437, 442 (Ky. App. 2023) (quoting *Brown v. Commonwealth*, 313 S.W.3d 577, 610 (Ky. 2010)) (footnote omitted).

KRS 403.250(1). Maintenance becomes unconscionable if it is "manifestly unfair or inequitable." *Combs v. Combs*, 787 S.W.2d 260, 261 (Ky. 1990). Since the policy of the statute is for relative stability, evidence for the movant must be compelling for the family court to grant the relief requested. *Bickel v. Bickel*, 95 S.W.3d 925, 927-28 (Ky. App. 2002).

The family court's decision to "decline modification of the maintenance award is reviewed for abuse of discretion." *Tudor v. Tudor*, 399 S.W.3d 791, 793 (Ky. App. 2013). The family court abuses its discretion when its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Artrip v. Noe*, 311 S.W.3d 229, 232 (Ky. 2010).

The only basis Scott asserted in the 2007 and 2008 Motions for reducing Gloria's maintenance was that Gloria had begun receiving monthly payments for the military retirement, and that as a result his monthly maintenance obligation should be reduced by the same amount. However, Kentucky courts do not apply a mathematical formula in determining the amount of maintenance. *Age v. Age*, 340 S.W.3d 88, 95 (Ky. App. 2011) ("[N]o particular formula has ever been held as the method for establishing maintenance."). Thus, the mere fact that Gloria began receiving payments from her portion of the military retirement did not compel the family court to order a corresponding reduction of her maintenance. Instead, the family court was required to consider whether any change was

substantial and continuing enough to make the prior award unconscionable. And this is what it did when it compared the change to the parties' overall circumstances. Even with the military benefits, the family court determined that Scott's income far exceeded Gloria's income and that the additional income to Gloria, while continuing, was not substantial enough in relation to her overall needs and situation to require modification. The family court's decision was supported by substantial evidence of record, and we cannot appreciate any abuse of discretion in the family court's determination as related to its decision to deny the 2007 and 2008 Motions.

### III. GLORIA'S CROSS APPEAL: NO. 2017-CA-1690-MR

Gloria's 2017 cross-appeal asserted that the family court erred by not properly calculating and entering an award for the maintenance arrearage she claims Scott owed her. This is the primary reason Gloria moved for relief under CR 59.05. The family court's July 28, 2021 Judgment/Order corrected the prior omission and rendered her 2017 cross-appeal moot. As such, we will not address the cross-appeal any further.

### IV. SCOTT'S SECOND APPEAL: 2021-CA-1367-MR

Before we delve into the substance of Scott's appeal, we must first address Gloria's motion to strike Scott's brief. Gloria asserts Scott's brief should be stricken because, contrary to the prehearing order issued by this Court, Scott's

brief in the 2021 appeal made new arguments related to the denial of his 2007 and 2008 Motions. This Court's March 2, 2022 prehearing conference order provided "[i]f any *new* statutory or case law has arisen since the submission of the briefs in 2017-CA-1641 and 2[0]17-CA-1690, the parties will be permitted to supplement in the 2021-CA-1357 briefs[.]" (Emphasis added.) This Court's prehearing order was intended to allow the parties to include citations to additional authority only to the extent that authority did not exist at the time the parties filed their briefs in 2019. The Court did not intend for the parties to reformulate their arguments. This is the reason the Court denied Scott's motion to substitute his 2021 brief for the briefs he filed in 2019 as stated in our October 13, 2022 order. While we have elected not to strike Scott's brief, we have considered the brief only to the extent it complies and is consistent with our March 2, 2022 prehearing order.[13]

Scott's second appeal relates to the denial of the 2013 Motion.[14] As related to the 2013 Motion, the family court's July 28, 2021 order provides:

---

[13] We have denied Gloria's motion to strike by separate order.

[14] In the introduction paragraph of his brief, Scott asserts that the family court's errors subjected him to "an arrearage judgment of over $200,000.00." Even setting aside whether the family court erred, we must point out an arrearage judgment was required because Scott began making deductions from Gloria's motion *before* the family court had ruled on his motions and continued to do so even after having been admonished to stop making the deductions. "Past due payments for . . . maintenance become vested when due. Each payment is a fixed and liquidated debt which a court has no power to modify[.]" *Pursley v. Pursley*, 144 S.W.3d 820, 828 (Ky. 2004) (footnotes and citations omitted). The only exception to this rule is that a court may reduce maintenance retroactive "from the filing of the motion to the entry of judgment." *Mudd v. Mudd*, 903 S.W.2d 533, 534 (Ky. App. 1995). Had Scott simply paid the maintenance when due, he would not owe such a large arrearage. But, against the family court's instructions, Scott

The parties were married for approximately 18 years. During their marriage Scott was employed by the United States Marine Corps. Prior to the parties' divorce, Scott was receiving 100% of this retirement benefits and remitting to Gloria her marital portion (36.5%). He contends that any maintenance he pays to Gloria should be offset by the USMC retirement benefits she is paid.

Findings of Fact and Conclusions of Law were entered by Judge Paula Sherlock on March 29, 2007, which awarded maintenance to Gloria of $304,800.00 to be paid over twelve years. Judge Sherlock did not order that Gloria's maintenance should be offset by the retirement benefits she received. However, when Gloria began receiving her share of Scott's retirement benefits directly in May 2007, Scott reduced his maintenance payments correspondingly.

On September 13, 2013, Scott filed his third motion to modify his maintenance obligation based on a change in the parties' financial situations. At that time, his earlier motions of June 7, 2007, and June 14, 2008, were still outstanding. Judge Sherlock entered an order on March 27, 2014, which denied Scott's first motion to modify his maintenance obligation and granted his second one. The Court did not reach the September 2013 motion in its March 2014 Order because it found grounds to reduce Scott's maintenance obligation beginning in 2008. However, on September 12, 2017, Judge Sherlock entered an order granting Gloria's motion to alter, amend, or vacate the March 2014 Order and reversing the maintenance reduction, finding that an error had been made regarding Gloria's monthly expenses. The Court's Order of September 12, 2017, only addresses Scott's first

---

continued to deduct large sums from Gloria's maintenance each month believing, ultimately incorrectly, that his legal arguments would prevail, and the family court would eventually enter an order retroactively reducing his maintenance to the date he filed his motions and wiping away his large arrearage. Scott created the need for an arrearage judgment, and he should not now be heard to complain that it is so large.

two motions to modify his maintenance obligation because they were the subject of the March 27, 2014 hearing. Therefore, this Court must determine whether Scott was entitled to a modification of his maintenance obligation in 2013 when he filed his third motion for a reduction.

On October 11, 2013, the parties were before Judge Paula Sherlock for a hearing on Gloria's motion for maintenance arrears and Scott's motions to reduce his maintenance obligation. Gloria testified that the full amount of arrearages owed between 2007 and July 2013 was $107,456.22. Scott stipulated that Gloria's calculation accurately reflected the amount that he had deducted from his maintenance payments when she began to receive his retirement benefits from USMC.

At the time of the parties' divorce trial in 2006, Gloria was not employed outside the home. The parties had four minor children and had traveled extensively during their marriage because of Scott's job with the USMC. She was relicensed as a nurse in 2007. At the maintenance hearing in 2013, Gloria testified that her current income included a USMC retirement payment of $1,586.65 a month, child support of $700.00 a month for the parties' 17-year-old daughter, and her earnings from three part-time jobs. Gloria works as a PRN at The Brook and Family Health Center. She also does contract work for Dreams with Wings. In addition, she had recently accepted a PRN position with Malone Staffing. She testified that she tries to work as many shifts as she can so that her net income is approximately $2,000.00 a month. Her 2012 wages were $22,531.00. She had previously had income from a rental property, but she moved into the residence when the renters left. Scott contends that Gloria is voluntarily underemployed and that she should be imputed income for full-time employment at $21.80 an hour, or $45,344.00 annually.

Gloria testified to her monthly expenses, providing details about household expenses ($5,663.00) and expenditures for the parties' daughter ($1,208.00). Although Scott pays $700.00 a month to Gloria in child support, by agreement, Gloria testified that private school tuition, which she pays on her own, is $685.00 a month. Therefore, she must cover all of their daughter's other living expenses from other income sources. The Court finds that Gloria voluntarily pays private school tuition for the parties' minor child and will not consider that expense when considering her maintenance award.

After Scott retired from USMC in 2004, he worked for Sphere Communications. In 2007, Judge Sherlock found that Scott had gross income of $13,941.34 a month from his employment as well as disability and retirement pay from USMC when she set his maintenance obligation. Scott testified that income was reduced almost immediately when Gloria began receiving her share of his retirement benefits in May 2007. Judge Sherlock ruled that Scott's change in income was not substantial enough to warrant a modification of maintenance in 2007 or 2008.

Scott's employment with Sphere Communications ended in 2008 when the company was sold. Scott testified that he started a consulting business (Veterans Up) and a business selling office furniture to government agencies (Mesh Furniture); however, by 2013 neither company was earning any income for him. His 2011 and 2012 tax returns showed business losses. In February 2013, he started working for Biotap Medical. He had a 15% ownership interest in the company. He testified that he would be earning an annual salary of $72,800, or approximately $6,000 a month (gross). His income from his USMC retirement was $2,760.50 (gross) per month, and he was receiving disability benefits of $1,687.00 per month. Scott testified that he has net monthly income of $8,457.00.

At the October 2013 hearing, Scott testified regarding his monthly expenses, which he calculated at over $13,000 a month. Besides his own living expenses, Scott testified that he supported all three of the parties' emancipated children financially. He owned a home on Eastern Parkway with a mortgage payment, where two of the parties' adult children lived while in college at UofL. Although the parties' children did not pay rent, other renters lived in the building, which offset some of the costs associated with the property. All four of the parties' children were covered by Scott's TriCare insurance with USMC. He did not pay a monthly premium, but there is an annual deductible of $2,000.00, which Scott testified he paid every year. For the parties' minor daughter, specifically, in addition to health and dental insurance, Scott testified that he paid her cellphone and car insurance and gave her money for incidentals. Although she did not have her own vehicle in 2013, she was an insured driver so that she could drive Gloria's car or borrow her older sibling's cars.

Scott testified that he was using credit to make up the deficit each month between his income and expenses. He refinanced the mortgage on the residence on Eastern Parkway to access the equity in the property and borrowed money from his companies. He testified that he had been using credit cards for living expenses, but he was no longer doing that. Scott also testified to expenses related to his lake house and boat, which he maintains despite his reduced income in recent years. The Court finds that Scott voluntarily pays college tuition and other living expenses for the parties' adult children and will not consider those expenses when considering his motion to reduce his maintenance obligation.

Under KRS 403.250, this Court may modify Scott's maintenance obligation, "only upon a showing of changed circumstances so substantial and continuing as to make the terms unconscionable." While the Court recognizes that Gloria's income has increased since

2006, Judge Sherlock's original maintenance award anticipated that she would return to work post-divorce and earn greater income. Even if the Court imputes full time income to Gloria, Scott's actual income exceeds it. Furthermore, the Court expects that Scott's financial support of the parties' adult children in 2013 was likely to have been short term, while the children were completing their educations. While Scott contends that he is unable to meet his maintenance obligation as set out by Judge Sherlock in 2007, this Court finds that he simple prioritizes other expenditures over Gloria's maintenance award.

The Court finds that the parties' financial circumstances at the time of the hearing in October 2013 were not "substantial and continuing" and that the maintenance award of $304,800.00 over twelve years was not unconscionable. KRS 403.250(1). The Court being sufficiently advised, IT IS HEREBY ORDERED that Scott's motion of September 13, 2013, to reduce his maintenance obligation is OVERRULED. Furthermore, Scott's decision to unilaterally offset his monthly maintenance obligation dollar-for-dollar for retirement benefits paid to Gloria beginning in May/June 2007 was inappropriate.

It is reasonable to expect that the parties' circumstances will fluctuate over time. However, not all changes, even continuing ones, justify modification of a maintenance award. To justify modification, the change in the parties' positions must be so substantial and continuous to make the original award unconscionable. *Holland v. Herzfeld*, 610 S.W.3d 360, 364 (Ky. App. 2020). No mathematical formula exists to calculate unconscionability.

-30-

In essence, Scott argues that Gloria was no longer entitled to maintenance when the family court denied his motion to modify. However, as this Court has previously held, whether Gloria would currently be entitled to maintenance under KRS 403.200(1) does not necessarily render her continued receipt of maintenance unconscionable. *Id.* at 364. As the family court recognized when it denied the 2013 Motion, it was assumed that Gloria's income would slowly increase over time. In fact, the family court built in consideration of this eventual increase as part of its original order, as the monthly payments were ordered decreased after two years.

When addressing the 2013 Motion, the family court was not required to reweigh the KRS 403.200(1) factors, it was simply required to determine whether substantial and continuing changes had rendered the original award unconscionable. "The [family] court was undoubtedly in the best position to listen to the testimony, review hundreds of pages of evidence, and assess the credibility of the witnesses who testified." *Mahl v. Mahl*, 671 S.W.3d 140, 147-48 (Ky. 2023). Having done so, it reached a reasoned and well-articulated decision that modification was not required.

The family court's findings were set out in more than adequate detail, and the family court applied the correct legal standard in deciding whether to terminate or modify maintenance. Its decision is supported by substantial evidence

-31-

in the record that the incomes of the parties remain disparate, and any shortfall in Scott being able to meet his monthly expenses and pay Gloria's maintenance was temporary and created by his own decisions to prioritize his discretionary spending over his legal obligation to continue providing support to Gloria as he was ordered to do in March 2014.

## V. CONCLUSION

For the reasons set forth above, we affirm the orders of the family court in Appeal No. 2017-CA-1641-MR and Appeal No. 2021-CA-1367-MR and conclude that the issue raised by the Cross-Appellant in Appeal 2017-CA-1691-MR is now moot.


MCNEILL, JUDGE, CONCURS.

LAMBERT, JUDGE, DISSENTS AND DOES NOT FILE SEPARATE OPINION.

| BRIEFS FOR APPELLANT / CROSS-APPELLEE: | BRIEFS FOR APPELLEE / CROSS-APPELLANT: |
|---|---|
| Mary Janice Lintner<br>Louisville, Kentucky | Ruth Ann Cox Pence<br>Louisville, Kentucky |